Argued and submitted August 29, affirmed October 24, 1990

# STATE OF OREGON,
*Respondent,*

*v.*

# JERROLD WILLIAM ALLISON,
*Appellant.*

(89082194; CA A63625)

799 P2d 676

Kent Hickam, Albany, argued the cause and filed the brief for appellant.

Ann F. Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

Edmonds, J., dissenting.

## WARREN, P. J.

Defendant appeals his conviction for resisting arrest. ORS 162.315. He assigns error to the denial of his motion for judgment of acquittal. ORS 136.445. We affirm.

Officers Bailey and Mahler stopped to investigate what appeared to be an unoccupied vehicle that was on the side of the road with its engine running. They found defendant slumped over in his seat. He was intoxicated and hostile and refused the officers' orders to turn off the engine and get out of the car. He grabbed Bailey's radio and stuffed it down his pants. Bailey grabbed defendant's left arm and tried to pull him out of the vehicle, but he locked his right arm around the steering wheel. Mahler tried to help, and the men struggled for several minutes. Defendant eventually relented and stepped out of his vehicle. The officers then had to drag him to the police vehicle by his handcuffed arms while he fought against them by digging his feet into the ground.

■ Defendant argues that his motion for a judgment of acquittal should have been granted, because the state failed to prove that defendant "resisted" within the meaning of the statute. We review the evidence, viewed in the light most favorable to the state, to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. King*, 307 Or 332, 768 P2d 391 (1989).

■ At the time of defendant's arrest, ORS 162.315 provided, in part:

"(1) A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer in making an arrest.

"(2) 'Resists,' as used in this section, means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person."

The statute did not prohibit passive resistance or flight. *State v. Hutchinson*, 94 Or App 441, 765 P2d 248 (1988). We disagree with defendant's contention that his conduct was mere passive resistance. A rational trier of fact could find that clutching a steering wheel while one's body is being pulled the other direction involves the use of physical force.

■ The state also had to offer evidence that defendant's conduct created "a substantial risk of physical injury *to any person."* ORS 162.315(2). (Emphasis supplied.) *See also State v. Crane,* 46 Or App 547, 612 P2d 735, *rev den* 289 Or 903 (1980). The legislative history indicates that "any person" includes *"the actor,* the peace officer or other persons in the immediate area." *Commentary to Proposed Oregon Criminal Code* 204, § 206 (1970). (Emphasis supplied.) A rational trier of fact could conclude that defendant's conduct created a substantial risk of injury to himself. By locking his arms around the steering wheel, defendant put himself in the position of a rope in a tug-of-war. With enough force, eventually, the rope will break. Officers should not have to risk pulling a defendant's arm out of its socket in order to place him under arrest. The trial court correctly denied defendant's motion for judgment of acquittal.

Affirmed.

**EDMONDS, J.,** dissenting.

In response to defendant's motion for a directed verdict of acquittal, the trial court said:

> "[A]fter the defendant got out of the car, there was not a resisting arrest. Before [he got out], I am convinced that there was. * * * I'm going to find the defendant guilty of resisting arrest. I think there's enough evidence to indicate that while he was in the car, that there was a substantial risk of physical injury to some one [sic] of the three people there."

The evidence indicates that, while defendant was in the car, he did not wrestle with the officers in an attempt to get away; rather, he simply wrapped his arm around the steering wheel and refused to leave the truck. The majority speculates that defendant, by these actions, risked having his arms pulled from their sockets. The record does not support that inference. What the record does show is that one officer grabbed defendant's left arm and attempted to pull him from the vehicle. Defendant locked his right arm around the steering wheel. The other officer came around to the driver's side to assist, and a conversation ensued. One of the officers told

defendant to get out of the pickup and defendant complied. There is no evidence to support an inference of the extent of force used by the officers or of the risk of the injury that the majority says could have resulted.[1]

---

[1] The arresting officer testified:

"Q After you took the keys out of the ignition, would you please describe the defendant's reaction?

"A The defendant became argumentative, combative, started shouting, saying give me my * * * keys and stuff to the effect, and I had ahold of his left arm by that time and was twisting his left arm, telling him to come on out of the pickup. He said no, I'm not coming out of the pickup because you're going to arrest me if I do and I said, 'Yes, I am.'

"* * * * *

"Q How long did you struggle in that position - with your hand on his left arm?

"A It was a few minutes that we struggled back and forth. As I was trying to grab his arm and pull him out of the pickup, he had locked his right arm through the steering wheel by his elbow and, therefore, I couldn't pull him out of the pickup. I had no control of getting him out of the pickup whatsoever. At one point, Deputy Mahler had come back up to my side where I was holding on to the subject's arm and tried to also get him out of the pickup by grabbing him by the back, but he couldn't get him out of the pickup either. And that went on for a few minutes.

"Q Did you tell the defendant anything during that period of time?

"A During what time?

"Q During the time when [he] had his arm through the steering wheel?

"A I kept telling him to come on out of the pickup and he would reply that he wanted his keys back. He finally said I've told you for the — let's see, what was it — 16th damned time to give me those keys back. At a point in time, I don't remember exactly how long, after a few minutes he did say let go of me and I'll come out of the pickup. I told him no, I'm not going to let go of your arm — I will release the tension on your arm if you'll come out of the pickup.

"* * * * *

"Q Were you able then to eventually get the defendant out of the pickup?

"A Yes I was. I had released my grip that was on his left arm a little bit and he did step out of the pickup and raised his right arm above his head. * * *."

The other officer testified:

"Q And what happened then?

"A He grabbed hold of his left arm and tried to pull him out and I could determine from what I observed that he was intoxicated due to alcohol.

"* * * * *

"Q Did you hear the defendant say anything during your contact with him?

"A He just said 'Leave me alone,' * * *.

"* * * * *

"Q What happened after the contact between Deputy Bailey and the defendant?

"A Well, Mr. Allison put his hands down through the steering wheel — they

The majority is correct when it says that ORS 162.315 requires the state to "offer evidence that defendant's conduct created 'a substantial risk of physical injury *to any person.*'" 104 Or App 152. (Emphasis in original.) However, there simply is insufficient evidence in the record to support a finding beyond a reasonable doubt that defendant's conduct created such a risk.[2]

---

were interlocked. * * *

"* * * * *

"Q And as you got back to the pickup, then how long did the defendant remain inside the vehicle?

"A Maybe three to four minutes. Finally — Mr. Bailey finally got him to free his hand up and he finally got him out of the pickup.

"* * * * *

"Q So both of you were pulling on him?

"A I wasn't pulling on him, Deputy Bailey was. I just tried to grab his right shoulder.

"Q You were trying to grab his shoulder?

"A Right shoulder, yes. But his hand was interlocked through the steering wheel."

[2] Interestingly, the trial court did not believe that defendant resisted arrest when he dragged his feet. What greater risk of injury was caused by his grabbing the steering wheel is not demonstrated in the record.