Submitted May 28, conviction for purchasing an angling license while suspended reversed; otherwise affirmed August 6, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DOUGLAS WAYNE REMSH,
*Defendant-Appellant.*

Douglas County Circuit Court
05CR1153MI; A131990

190 P3d 476

Peter Gartlan, Chief Defender, Legal Services Division, and Elizabeth Ann Corbridge, Deputy Public Defender, Office of Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Samuel A. Kubernick, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

Defendant was charged with purchasing an angling license while suspended, ORS 497.415(5); purchasing a salmon/steelhead tag while suspended, ORS 497.415(5); and resisting arrest, ORS 162.315. He moved for a judgment of acquittal on the purchasing an angling license charge, arguing that the state did not prove that he "purchased" an angling license while suspended. He also moved for a judgment of acquittal on the resisting arrest charge, arguing that the state failed to prove that he "resisted" arrest. The trial court denied defendant's motions. On appeal, he challenges the trial court's rulings on those two motions. We reverse as to defendant's conviction for purchasing an angling license, but otherwise affirm.

■        In reviewing a trial court's denial of a motion for a judgment of acquittal, we view the evidence and all reasonable inferences in the light most favorable to the state, and determine whether the record contains evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994).

In 1999, defendant was issued a permanent angling license. In 2004, the license was suspended for a period of two years. A year later, State Trooper Frerichs learned in the course of a routine investigation of Oregon Department of Fish and Wildlife (ODFW) records that defendant's license had been suspended. Frerichs also learned that defendant had recently acquired an angling license from a local Bi-Mart store.

On the basis of that information, Frerichs went to defendant's house to seize the angling license and issue a citation to defendant. When Frerichs arrived at defendant's home, however, he noticed the strong smell of smoked fish. Frerichs asked defendant about the odor. Defendant became verbally abusive toward the officer. Frerichs advised defendant of his *Miranda* rights and asked why defendant had purchased a license while he was suspended. Defendant became more verbally abusive, complaining that the officer was harassing him. When Frerichs asked him to produce the

angling license, defendant refused. Frerichs arrested defendant.

Frerichs placed defendant in handcuffs and walked with him out of the residence and to the driveway. At that point, as Frerichs later recalled, defendant "just stopped, and he said, 'I'm not going to play this game.'" Defendant "jerk[ed] away" from Frerichs and "start[ed] going back towards the house." Frerichs told defendant, "No, you're not," and "grab[bed] ahold of [defendant's] entire body" to prevent defendant from going back into the residence, stating, "You're going to go to the ground if you don't knock it off." Defendant then stopped and walked back toward the patrol car that was parked in the street.

Defendant was charged by information with purchasing an angling license while suspended, purchasing a salmon/steelhead tag while suspended, and resisting arrest. With respect to the first charge, the information alleged that defendant "did unlawfully and knowingly purchase an Oregon angling license at a time when his right to purchase this license was suspended."

At trial, the state offered evidence of the foregoing facts. The state also offered the testimony of Cole, the office manager of the local ODFW office, about the state's regulation of angling licenses generally. Cole also testified as to defendant's license specifically, explaining that, because defendant had been issued a permanent angling license in 1999, he did not have to purchase additional angling licenses. Frerichs also testified at the trial. He described the risk of injury he perceived when he arrested defendant:

"A.  I'm a single guy there by myself. I have a person in custody I'm now responsible for, and if he gets hurt, I'm responsible for him.

"Q.  Okay.

"A.  If he falls down and hurts himself, I'm responsible.

"Q.  Okay.

"A.  And if he gets away, I'm responsible. And so basically at that point in time, when he jerks away and starts

going back towards the house, I had to physically grab ahold of his entire body."

The state elaborated upon Frerichs's perceived risk of injury in its closing argument:

"But keep this in mind, that Trooper Frerichs puts those handcuffs on [defendant], and now Trooper Frerichs is responsible for him. Think about what it must be like to put somebody in custody and realize that he might show up in jail with skinned knees. He might show up with a bruise. * * * [H]e very easily could have fallen[.]"

As we have noted, defendant moved for a judgment of acquittal. He argued that the state failed to prove that he had "purchased" an angling license while suspended and that the state failed to prove that he "resisted" arrest. The trial court denied the motions. Defendant then offered evidence that, in fact, he had not purchased the angling license at Bi-Mart, but had obtained it free of charge given that, as Cole had explained, his possession of a permanent license meant that he did not have to purchase another. A jury returned a verdict of guilty on all three counts.

■ On appeal, defendant first assigns error to the trial court's denial of his motion for a judgment of acquittal on the charge of purchasing an angling license while suspended. He contends that the state failed to prove he actually "purchased" an angling license from Bi-Mart. The state concedes the insufficiency of the evidence on that charge.

■ Despite the state's concession of error, we have an independent obligation to review the rulings of the trial court for errors of law. *State v. Enakiev*, 175 Or App 589, 593 n 4, 29 P3d 1160 (2001) (citing *State v. Bea*, 318 Or 220, 224, 864 P2d 854 (1993)). As we have noted, the information alleged that defendant "did unlawfully and knowingly purchase" an angling license while he was suspended. The statute that defines the offense provides that a person whose license has been suspended may not "apply for or obtain another such license, tag or permit." ORS 497.415(5). It does not require proof that a person purchased such a license, tag, or permit. Nevertheless, as the state acknowledges, because the information alleges that defendant "purchase[d]" the license, that is what it was required to prove. *Cf. State v. Lane*, 341 Or 433,

440, 144 P3d 927 (2006) (stating that the state was required to prove the defendant's mental state as alleged in the charging instrument).

In that light, it is clear that defendant is correct and that the state appropriately has conceded the insufficiency of its proof of "purchase," which ordinarily refers to obtaining something *in exchange* for something of value. *Webster's Third New Int'l Dictionary* 1844 (unabridged ed 2002) (defining the verb "purchase" as "to obtain (as merchandise) by paying money or its equivalent : buy for a price"). The charge in this case was based on the transaction in which he obtained a license at Bi-Mart in 2005. The record, however, includes no evidence that defendant actually paid for the license. To the contrary, the only evidence on the point is that defendant received the license free of charge, because he already possessed a permanent angling license. We conclude that the trial court erred in denying defendant's motion for a judgment of acquittal on that charge.

In his second assignment of error, defendant argues that the trial court erred in denying his motion for a judgment of acquittal on the charge of resisting arrest. He argues that his behavior at the time of his arrest was mere passive resistance, which is insufficient as a matter of law. He argues that the evidence also was insufficient because there was no evidence that his conduct created a risk of harm to himself or others.

The state responds that defendant's act of jerking away from Frerichs while Frerichs led him to the driveway was an act of physical force beyond mere passive resistance, requiring Frerichs to grab and restrain him. As for the risk of harm that resulted, the state argues that defendant's conduct created a risk of harm to himself by falling or otherwise injuring himself.

ORS 162.315 (2003),[1] the version of the statute in effect at the relevant time, provided, in part:

---

[1] ORS 162.315 was later amended to include references to "parole and probation officer" in addition to "peace officer." Or Laws 2005, ch 668, § 2.

"(1) A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer in making an arrest.

"(2) As used in this section:

"* * * * *

"(b) 'Resists' means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to an officer. Passive resistance does not constitute behavior intended to prevent being taken into custody."

"Resisting" arrest thus requires both a means and an end. The means includes the use of violence, physical force, or any other means. The end is a substantial risk of physical injury to any person, which need not actually result in injury. In this case, defendant asserts that the state's proof failed as to both aspects of "resisting" arrest.

■ ■    We begin with whether the evidence shows the required use of violence, physical force, or other means. Defendant is correct that passive resistance and nonviolent flight are insufficient to establish "resisting" arrest. *State v. Hutchinson*, 94 Or App 441, 443, 765 P2d 248 (1988). But the evidence in this case shows that defendant did more than that. As we have noted, when Frerichs placed him under arrest, defendant responded, "I'm not going to play this game," and jerked away. Frerichs had to "grab ahold of [defendant's] entire body" to prevent him from leaving the scene. Defendant's actions certainly entailed the use of "physical force" within the meaning of the statute. In *State v. Allison*, 104 Or App 149, 151, 799 P2d 676 (1990), for example, we concluded that, when the defendant clutched a steering wheel while an officer attempted to pull his body in another direction, that conduct constituted "physical force" sufficient to establish that the defendant was "resisting" arrest. In this case, defendant's jerking away was likewise sufficient to establish that element of the offense.

■    We turn to whether the evidence showed the required resulting substantial risk of physical injury. In *Allison*, we held that evidence that the defendant clutched the steering wheel of his vehicle, forcing the arresting officer to pull him away, was sufficient to establish a significant risk of harm to the defendant himself. The defendant, we noted, "put himself in the position of a rope in a tug-of-war. With enough force, eventually, the rope will break. Officers should not have to risk pulling a defendant's arm out of its socket in order to place him under arrest." 104 Or App at 152. In this case, a rational trier of fact similarly could find that, as Frerichs testified, defendant's actions created a substantial risk of injury to himself. Defendant, while handcuffed, jerked out of Frerichs's grasp and exposed himself to physical harm.

We therefore conclude that the evidence was sufficient to permit a rational trier of fact to find that defendant "resisted" arrest and that the trial court did not err in denying his motion for a judgment of acquittal on that charge.

Conviction for purchasing an angling license while suspended reversed; otherwise affirmed.