GARRETT, J.
*698 Defendant appeals a judgment of conviction for resisting arrest, ORS 162.315, assigning error to the trial court's denial of his motion for a judgment of acquittal (MJOA). Defendant argues that the state failed to prove two elements of resisting arrest: (1) that defendant's conduct created a "substantial risk of physical injury to any person" within the meaning of ORS 162.315(2)(c), and (2) that defendant had the requisite intent with respect to that risk. With respect to the first element, we conclude that there was sufficient evidence to support a finding that defendant created a substantial risk of physical injury to himself and police officers. With respect to the second, we conclude that defendant failed to preserve the argument that he now makes on appeal, and, therefore, we do not reach its merits. Accordingly, we affirm.
In reviewing the trial court's denial of defendant's MJOA, we "review the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the state." State v. Eastep , 361 Or. 746, 748, 399 P.3d 979 (2017). We then determine whether "a rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt." State v. Horton , 291 Or. App. 65, 69, 418 P.3d 31 (2018).
We state the facts consistently with our standard of review. K called 9-1-1 to report that defendant had assaulted her, and three uniformed police officers-Herrera, Blake, and Skeahan-responded to defendant's home. When the officers arrived, K told them that defendant had punched her and that defendant was inside the house. Herrera decided to place defendant under arrest, and Herrera and Blake entered the home. Skeahan remained outside with K.
After learning that defendant was upstairs, Herrera and Blake stood at the bottom of the stairs, announced their presence, and instructed defendant to come down the stairs. The staircase was steep, dimly lit, and "built for one average size person to walk down." Defendant, who is approximately six feet tall and 245 pounds, descended the stairs facing the officers, with his hands behind his back. Herrera told defendant, "Let me see your *744 hands," and defendant responded, *699 "Why?" When defendant reached the bottom of the stairs, Herrera told him that he was under arrest. Defendant asked, "What for?" He then stated either "I'm not going to jail" or "I'm not going anywhere," and his voice became "elevated."
Herrera put on latex gloves, and he and Blake each grabbed one of defendant's wrists. At that point, defendant "tensed up very hard" and he pulled his arms toward his body. Herrera told defendant that he did not want to fight and again stated that defendant was under arrest. While still in the stairwell, the officers attempted to put defendant's arms behind his back. Defendant "tried to push [the officers] off and push [the officers] against the wall." The officers unsuccessfully tried to pin defendant against the wall. Defendant was "pushing back" and was "trying to push his way through" the officers to the point that Blake was "using most of [his] strength to try to hold onto" defendant. During the struggle, Herrera told defendant to stop resisting and to put his hands behind his back.
Blake radioed Skeahan for assistance. After Skeahan entered the home, he saw Herrera and Blake "wrestling" with defendant. Defendant, Herrera, and Blake "stumbled" from the base of the stairs into the nearby kitchen. The officers decided to take defendant to the ground because defendant was "trying to break through [the officers'] holds." Skeahan approached defendant, put his hands on defendant's shoulder, and "lift[ed]" defendant's jacket "a little bit," which "forced everybody towards" Skeahan. Skeahan then "stepped out of the way" as "everybody was kind of forced down to the floor." When the group hit the kitchen floor, the "refrigerator shook a little bit." There was a large island in the kitchen that had a "bunch of dishes and all kinds of stuff" on it.
Defendant ended up on his stomach on the ground, and attempted to "hide his hands or pull his arms further underneath his body." Skeahan attempted to help Herrera move defendant's arm out from under his torso. Blake lost his grip on defendant's arm, and he proceeded to deliver "focus blows" with his fist to defendant's sides and back, which were intended to distract defendant long enough for officers to subdue him. The "focus blows" had no effect, so Blake *700 took out his Taser and warned defendant that he was about to use it. Defendant responded, "I'm done. You don't have to use that." Skeahan then handcuffed defendant. The whole altercation lasted approximately two minutes. Herrera and Blake both suffered minor injuries to their arms during the altercation.
The state charged defendant with, among other things, one count of resisting arrest. In a bench trial, at the close of the state's evidence, defendant moved for a judgment of acquittal on the resisting-arrest count. Defendant argued that the officers had initiated the physical altercation with defendant before making clear to defendant that he was under arrest.[1] Defendant continued:
"And, Judge, now we're at the statute looking at-and you as the fact finder get to decide this, whether my client's actions intentionally-(inaudible) charged here-intentionally created a substantial risk of physical injury to any person. ***.
"What do we have here? Resist-again under the statute-'resist' means the use or threatened use of violence, okay? So[,] there's no evidence that my client threatened violence or used violence against the officers ***. Physical force or any other means that creates a substantial risk-I think substantial is important here, *** substantial risk of physical injury to any person. *** So did [defendant's] actions intentionally, not the police officers' actions but [defendant's] actions intentionally create a substantial-which I believe means, you know, fairly high level, *** risk of physical injury to any of the four of them that were involved in this attempt to handcuff [defendant]? I would assert *** that [defendant's] actions by simply tensing up his arms to his side did not create a substantial risk of injury to himself or any of the officers. I would argue on the contrary, the officers' actions in escalating the situation *745 in tackling him to the floor created a substantial risk.
"In fact, [the prosecutor] asked two of the officers if[,] in their opinion[,] [defendant's] actions created a *** substantial risk of physical injury to any of them, and two of *701 them testified yes, but then both of them started talking about what they had done. *** So[,] the question was, did [defendant's] actions create a risk of injury? *** [The officers] were very physical with [defendant] ***. He wasn't very physical with them[;] all he did was, again, not to belabor the point, tense up.
"* * * * *
"So, my argument is that [defendant's] tensing up resistance, while not passive resistance allowed by the statute, *** was not resistance as defined in the statute, Your Honor."
The trial court denied defendant's MJOA. In closing, defendant repeated the arguments that (1) his actions did not satisfy the conduct element of resisting arrest because the officers were responsible for any risk of injury that arose and (2) defendant did not know he was under arrest when the altercation started.
On appeal, defendant argues that the state failed to present sufficient evidence that defendant engaged in conduct constituting resisting arrest within the meaning of ORS 162.315(1). Under ORS 162.315(1), "[a] person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest." The term "resists" is defined as follows:
"[T]he use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to an officer. Passive resistance does not constitute behavior intended to prevent being taken into custody."
ORS 162.315(2)(c). Defendant argues that there was insufficient evidence to support a finding that he created a substantial risk of physical injury to any person because "defendant did not engage in conduct directed toward harming the officers or himself, and there was no evidence that defendant's conduct indirectly placed anyone at substantial risk of physical injury."
*702 Based on the evidence and reasonable inferences from it, we conclude that a rational factfinder could find that defendant "resist[ed] arrest" within the meaning of ORS 162.315. The state presented evidence that, while standing in a narrow, dimly lit stairwell, defendant attempted to pull his arms away from the officers, attempted to push the officers against the wall, and tried to push the officers out of his way. From that evidence, a rational factfinder could infer that defendant, through his own actions, created a risk that one of the people involved would collide with a hard surface, such as the stairs or the wall, or would trip and fall. The evidence also showed that defendant, a large man, was struggling with such force that Blake and Herrera together could not subdue him and that Blake was using nearly all of his strength in his attempt to control one of defendant's arms. From that evidence, a factfinder could infer that defendant was using a degree of force that made that risk of injury to the officers a significant one. Thus, viewing that evidence in the light most favorable to the state, there was sufficient evidence to support a finding that defendant created a substantial risk that either he or the officers would suffer physical injury, based on the intensity of the physical struggle and the setting in which the altercation took place. See State v. Allison , 104 Or. App. 149, 152, 799 P.2d 676 (1990) (a "rational trier of fact could conclude that defendant's conduct created a substantial risk of injury to himself" by "locking his arms around the steering wheel" because such conduct created the risk that the officers would have to "pull[ ]" his arm "out of its socket in order to place him under arrest"); State v. Hutchinson , 94 Or. App. 441, 443-44, 765 P.2d 248 (1988) (concluding that a jury could have found beyond a reasonable doubt that the defendant's conduct "posed a substantial risk *746 of injury to others" based on evidence that "defendant wrestled and scuffled and attempted to get away from" the officer and "that defendant was a very strong person and was difficult for [the officer] to control, even when another officer came to his assistance").
We turn to defendant's argument that the state did not prove that he had the requisite mental state for resisting arrest. According to defendant, under ORS 162.315(2), the state was required, but failed, to prove that defendant *703 "had the conscious objective to create a substantial risk of physical injury." In other words, defendant argues that the statute requires the mental state of "intent" not merely with respect to a person's acts of resistance, but also with respect to the resulting risk of physical injury. We have not considered that issue before.
Defendant's argument is one of statutory construction. However, it is not one that defendant made below. Although the state does not challenge preservation, "we have an independent obligation to determine questions related to preservation of error." Hickam and Hickam , 223 Or. App. 302, 304, 196 P.3d 63 (2008). In general, we will not consider on appeal an issue that was not preserved in the trial court. Ailes v. Portland Meadows, Inc. , 312 Or. 376, 380, 823 P.2d 956 (1991). "We evaluate whether an issue is adequately preserved in light of the underlying purposes of the preservation rule-'to allow the trial court to consider a contention and correct any error, to allow the opposing party an opportunity to respond to a contention, and to foster a full development of the record.' " State v. Gray , 286 Or. App. 799, 806, 401 P.3d 1241 (2017), rev. den. , 362 Or. 482, 412 P.3d 199 (2018) (quoting State v. Clemente-Perez , 357 Or. 745, 752, 359 P.3d 232 (2015) ). "In practical terms, a party's argument to the trial court must be 'specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted.' " Id. (quoting State v. Wyatt , 331 Or. 335, 343, 15 P.3d 22 (2000) ). "[T]he presence of a 'common thread' between an objection at trial and an argument on appeal does not satisfy the preservation requirement if the two arguments are 'qualitatively different.' " Id. (quoting State v. Gaines , 275 Or. App. 736, 744, 365 P.3d 1103 (2015) ).
Applying those considerations here, we conclude that defendant did not preserve the argument he makes on appeal. Although he did argue that ORS 162.315 requires proof that he "had the conscious objective to create a substantial risk of physical injury" to himself or the officers, he never asked the trial court to determine the sufficiency of the evidence on that question. In the trial court, the statement most closely connected to defendant's argument on appeal is *704 the following: "Judge, now we're at the statute looking at-and you as the fact finder get to decide this, whether my client's actions intentionally-(inaudible) charged here-intentionally created a substantial risk of physical injury to any person." That did not present a legal argument about the sufficiency of the evidence of defendant's mental state; instead, it was a factual argument about how the court, as factfinder, should view the evidence.
Accordingly, defendant's argument is unpreserved, and we decline to address it.
Affirmed.

However, defendant acknowledged that the court could infer from the evidence that defendant heard and understood that he was under arrest.