Argued June 19, reversed and remanded for resentencing
December 11, 1978

STATE OF OREGON, *Respondent,*

*v.*

LARRY VON EIL EYERLY, *Appellant.*

(No. 145170, CA 10131, No. 145171, CA 10132,
No. 145172, CA 10133, No. 145173, CA 10134,
No. 145174, CA 10135, No. 145175, CA 10136,
No. 145941, CA 10310)

(Cases consolidated)

587 P2d 1039

Michael J. Hansen, Salem, argued the cause for appellant. With him on the brief was Robert J. Thorbeck, Salem.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

Defendant, a licensed automobile wrecker, appeals his convictions after trial to the court on charges that he failed to have in his possession duly assigned certificates of title or notifications of award of purchase for motor vehicles found on his business premises. The offense in question is defined by ORS 481.360(2) and ORS 481.990(1):

> "Except as provided in ORS 481.444 a person licensed under ORS 481.355 shall have in his possession a duly assigned certificate of title, or notification of award of purchase, for the motor vehicle from the time the vehicle is delivered to him until it is disposed of in accordance with ORS 481.430 and 481.435." ORS 481.360(2).
>
> "Any violation of ORS 481.345 to 481.370 * * * is a Class A misdemeanor." ORS 481.990(1).

Defendant's several assignments of error present two questions: (I) is ORS 481.360(2) unconstitutionally vague?; and (II) is the offense defined by ORS 481.360(2) a strict liability crime punishable by incarceration or a violation punishable by a fine only.

I

ORS 481.345 requires a person to have a "wrecker's license" before engaging in the business of buying or selling motor vehicles "for the purpose of wrecking, dismantling, disassembling or substantially altering" them. ORS 481.360(2) requires a licensee to possess specific evidence of ownership for vehicles in his possession. Defendant's claim that the statute is unconstitutionally vague is incomprehensible. We find the statute is clear and specific, and hold it is constitutional.

II

Although the prohibited conduct is clear, the elements of the offense and possible punishment are less clear. Some threshold definitions may be helpful:

> (1) "Offense" is a broad generic term that includes both crimes and violations. ORS 161.505.

(2) "Crimes" are offenses for which incarceration is authorized as a possible punishment. ORS 161.515(1). A crime is either a felony or a misdemeanor depending on the extent of possible incarceration. ORS 161.515; 161.545.

(3) "Violations" are offenses for which the maximum possible punishment is a fine, with no possibility of incarceration. ORS 161.565.

■ ORS 481.360(2) and 481.990(1) are outside the Oregon Criminal Code. To determine the elements of and possible punishment for an offense defined outside the Criminal Code, it is necessary to consider both the statute defining the offense, here ORS 481.360(2), and the general criminal liability statutes, ORS 161.085 *et seq.* The possibilities, under the criminal liability statutes, are:

(1) The offense is a crime which requires proof of a culpable mental state.

(2) The offense is a strict liability crime which does not require proof of culpable mental state.

(3) The offense is a violation.

Although their respective positions are at times obscure, we understand the state to argue that the offense here in question is a strict liability crime and the defendant to argue that the offense is a violation.

This conflict arises from facts that were complicated at about every available opportunity by the parties and the trial court. The original complaints against defendant did allege a culpable mental state, *i.e.,* that he "knowingly" failed to have the required evidence of motor vehicle ownership. On motion of the state prior to trial, the complaints were amended to eliminate the word "knowingly." In support of the amendments, the state argued the offense was a strict liability crime:

"[ORS 481.360(2) and 481.990(1)] place an affirmative duty on licensed wreckers to keep certain documents and make failure to do so a crime regardless of intent."

With one exception, and that precedes the present Criminal Code, the most recent case the state cited in

support of this argument was decided in 1914. The state's presentation to the trial court reveals absolutely no awareness of the general criminal liability statutes, ORS 161.085 *et seq,* enacted in 1971.

■ Defendant then demurred to the complaints on the ground that the facts alleged, given the elimination of an allegation of culpable mental state, "do not constitute an offense." ORS 135.630(4). But if defendant was really contending the offense was a violation rather than a strict liability crime, his demurrer was the wrong way to raise that question because in either event the facts alleged do "constitute an offense." ORS 161.505; *see State v. Taylor,* 28 Or App 815, 561 P2d 662, *rev den* (1977).

The trial court compounded the confusion by not ruling on the demurrer, but, instead, taking it under advisement and proceeding to trial. During the trial the state offered evidence concerning defendant's knowledge that some of the vehicles in question may have been stolen. Defendant objected that the amended complaints made his knowledge or lack thereof irrelevant. The court admitted the challenged evidence on the ground that it still had defendant's demurrer under advisement. After all the evidence was in, the trial court ultimately overruled defendant's demurrer and, at the time of sentencing, announced:

> "In order to clear the record it is the ruling at this time that the trial and the present proceeding are proceeding on the basis of the original complaint, which required a showing of 'knowingly.' "

Defendant was sentenced to a term of imprisonment.

We need not separately dissect the several errors committed in the course of these proceedings because they are all resolved or mooted by our conclusion that the offense here in question was, as tried, a violation.

ORS 161.095(2) provides:

> "Except as provided in ORS 161.105, a person is not

guilty of an offense unless he acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

ORS 161.115(2) provides:

"Except as provided in ORS 161.105, if a statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence."

ORS 161.105 provides:

"(1) Notwithstanding ORS 161.095, a culpable mental state is not required if:

"(a) The offense constitutes a violation, unless a culpable mental state is expressly included in the definition of the offense; or

"(b) An offense defined by a statute outside the Oregon Criminal Code clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof.

"(2) Notwithstanding any other existing law, and unless a statute enacted after January 1, 1972, otherwise provides, an offense defined by a statute outside the Oregon Criminal Code that requires no culpable mental state constitutes a violation.

"* * * * *."

One way to paraphrase the general rule of these statutes is to combine the substance of ORS 161.095(2) and 161.115(2): A person is not guilty of an offense unless he acts with a culpable mental state because even though a statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required. The statutes are structured in such a way to state, as an exception to the general rule so formulated, that offenses that are violations do not require proof of a culpable mental state. ORS 161.105(1)(a). An alternative formulation would combine the above-stated general rule and the above-stated exception into a single sentence: Generally,

offenses that are *crimes* do require proof of a culpable mental state, and offenses that are *violations* do not require proof of a culpable mental state.

■■ Use of this alternative formulation also makes it easier to state the few · remaining exceptions: (1) offenses that are violations require proof of culpable mental state when it "is expressly included in the definition of the offense," ORS 161.105(1)(a); and (2) there can be a strict liability crime, *i.e.,* the possibility of incarceration even in the absence of culpability, when the offense is defined by statute outside the Criminal Code *and* there is clear legislative intent to dispense with any culpable mental state requirement. ORS 161.105(1)(b).

■ As applied to statutes outside the Criminal Code, such as that here in question, the net effect of these statutes is to provide: All offenses that require no proof of culpable mental state are violations, ORS 161.105(2), unless the offense is a strict-liability crime under the clear-intent test of ORS 161.105(1)(b). *State v. Pierre,* 30 Or App 81, 566 P2d 534 (1977). Thus, the question in this case is whether there is clear legislative intent to dispense with culpability *i.e.,* create a strict liability crime, for violation of ORS 481.360(2) and 481.990(1).

The Oregon criminal liability statutes are based on the Model Penal Code. Commentary to Proposed Oregon Criminal Code 10 (1970). The draftsmen of the Model Penal Code explained the clear-intent test as follows:

> "In the case of crimes, as distinguished from violations, Paragraph (1)(b) [ORS 161.105(1)(b)] accepts strict liability when the crimes are defined by a statute other than the Code 'in so far as a legislative purpose to impose absolute liability for such crimes or with respect to any material element thereof plainly appears.' That such a purpose should not be discerned lightly by the courts seems very clear.
> "* * * * *

[ 405 ]

"[It is] tempting to provide * * * that the 'intention to create strict responsibility ought always to be evidenced by the words of the statute.' *i.e.* by an explicit statement and not merely by the absence of a form of words denoting a requirement of culpability. This is, however, too severe a test for practical purposes since so much existing legislation that would not satisfy the test has been construed to impose absolute liability. Legislative acquiescence in such constructions, without amendment of the statute, may reasonably be regarded as evincing legislative purpose that the liability obtain. Accordingly, the weaker requirement that such a purpose 'plainly appears' goes as far as we think it wise to go. In practice this might well mean either a settled interpretation or explicit statement in the statute. That is, however, left deliberately to judgment of the courts." Model Penal Code Tent. Draft No. 4, Comments § 2.05 at 145-46 (1955).

*State v. Pierre, supra,* indicates it is the judgment of this court that "legislative acquiescence" will not support a finding of clear intent to dispense with a culpability requirement given an absence of any history that the legislature was aware of the judicial constructions supposedly being approved by silence. 30 Or App at 86.

We conclude that, judged against the commentary to the Model Penal Code and *Pierre,* there is no clear legislative intent that violation of ORS 481.360(2) and 481.990(1) constitute a strict liability crime. There cannot have been any legislative acquiescence in a settled interpretation of those statutes for the simple reason that they have not previously been interpreted by an Oregon appellate court. The words of the statutes do not evidence an intent to create a strick liability crime, except possibly the statement in ORS 481.990(1) that the offense in question is "a Class A misdemeanor." But there are dozens of regulatory offenses outside the Criminal Code that purport to provide a possible criminal penalty, such as the Blue Sky statute involved in *State v. Pierre, supra.* The draftsmen of the Model Penal Code catalog over 40

common regulatory offenses, ranging from fishing in a prohibited area to selling margarine. Model Penal Code Tent. Draft No. 4, Commentary at 141-45. If just the statement that such regulatory offenses carried a possible criminal sentence were enough to satisfy the clear-intent test of ORS 161.105(1)(b), then the policy adverse to strict criminal liability expressed in ORS 161.085 *et seq* would be nullified. *See,* Commentary to Proposed Oregon Criminal Code 11 (1970).

Given the absence of a clear intent to create a strict liability crime, we hold the offense defined by ORS 481.360(2) and 481.990(1) constitutes a violation. The trial court erred in imposing a criminal sentence. Pursuant to Oregon Const., Amended Art VII, § 3, the cause is remanded for entry of judgments of conviction for violations and resentencing.

Reversed and remanded for resentencing.

**JOSEPH, J.,** dissenting.

Prior to the enactment of the Oregon Criminal Code of 1971, the offense defined by ORS 481.360(2) and ORS 481.990(1) was prosecuted as a strict liability crime. It has always been designated a misdemeanor; the statutes defining it have never required on their combined face proof of a culpable mental state. The critical question in this case is whether by enacting the Criminal Code of 1971, including the provisions now found at ORS 161.085 *et seq.,* the legislature intended to require proof of a culpable mental state for conviction of the offense, leaving it a misdemeanor, or whether the legislature intended to retain it as a strict liability offense, punishable only as a violation by virtue of ORS 161.105(2). Because I disagree with the majority's answer to that question and with the resulting disposition of this case, I respectfully dissent.

The majority and I begin from a common place, *i.e.:* The culpability provisions found in ORS 161.085 *et*

*seq.* present a puzzle not easily pieced together. I do not, however, share the majority's perception that it is necessary to trim some of the pieces and discard others in order to solve the puzzle. We are not authorized to ignore the plain language of statutes unless that language leads to patently unreasonable results. I foresee no such results from an adherence to the language of ORS 161.095 *et seq.*

The majority states that "[a]ll offenses that require no proof of culpable mental state are violations, ORS 161.105(2), unless the offense is a strict-liability crime under the clear intent test of ORS 161.105(1)(b)." While I agree with that proposition, I find in the majority opinion no statutorily-supported explanation why no proof of a culpable mental state was required in this case. The answer cannot be that ORS 481.360(2) and 481.990(1) do not on their face require a culpable mental state. ORS 161.095(2) provides:

> "Except as provided in ORS 161.105, a person is not guilty of an offense unless he acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

ORS 161.105(1) sets forth the exception to 161.095(2):

> "Notwithstanding ORS 161.095, *a culpable mental state is not required if:*
>
> "(a) The offense constitutes a violation * * *; or
>
> "(b) An offense defined by a statute outside the Oregon Criminal Code clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof." (Emphasis supplied.)

The majority agrees that the statutes defining the offense in question do not clearly indicate a legislative intent to dispense with a culpable mental state requirement. Therefore, if one is to conclude that no culpable mental state is required, it must be because the offense constitutes a violation. However, the offense in question lies outside the Criminal Code and is specifically designated a Class A misdemeanor. To

[ 408 ]

say that it constitutes a violation because no culpable mental state is required is, to put it genteelly, circular. I therefore read ORS 161.085 *et seq.* to require proof of a culpable mental state in a prosecution under ORS 481.360(2).

Although the state may actually have proven a culpable mental state in this case, defendant was not given clear and timely notice by the complaints, the applicable statutes or by the rulings of the trial court that knowledge was an issue. I am not able to conclude with substantial certainty that defendant somehow knew from the outset that knowledge would become an issue under the amended complaints. I agree with the majority's conclusion that the criminal convictions must be reversed. I would end the matter there. No sentencing for a violation is proper because there is no such thing as a violation under ORS 481.360(2). Furthermore, were it necessary to reach the issue, I would conclude that the demurrer should have been sustained, because the amended complaints did not state an offense.

The legislation that has caused this court five months of exquisite cogitation to arrive at a still disputed result fairly cries out for legislative clarification.