Argued and submitted August 27, 2009, reversed and remanded June 30, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NICHOLAS RYAN RAINOLDI,
*Defendant-Appellant.*

Multnomah County Circuit Court
061255770; A136377

235 P3d 710

Rebecca A. Duncan, Assistant Chief Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Rene C. Holmes, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant appeals his conviction for attempted felon in possession of a firearm. Defendant argues that the trial court erred by failing to instruct the jury that, in order to convict him, the jury had to find that, at the time he committed the alleged attempt, he knew he had been convicted of a felony. The state responds that we correctly held to the contrary in *State v. Van Norsdall*, 127 Or App 300, 873 P2d 345, *rev den*, 320 Or 131 (1994). Because the relevant law on this issue has developed since our decision in *Van Norsdall*, we agree with defendant and overrule that case. We therefore reverse and remand.

The following facts are undisputed. Defendant went to a gun show and attempted to purchase a shotgun. As a prerequisite to the purchase, he filled out a written form and indicated that he had never been convicted of a felony. Based on that information, an employee of the gun vendor called the State Police Firearms Unit for approval to sell the shotgun. The request was denied, but—in accordance with police practice—the employee was not given the reason for the denial.

Portland Police Officers Jacquot and Kulp were working at the gun show and received a call from their headquarters that a person with a felony conviction was trying to buy a firearm. The officers went to the vendor's booth and contacted the owner, who identified defendant. The officers obtained the form that defendant had completed and took defendant outside. According to Kulp, defendant "wasn't trying to hide who he was and he was very open[.]"

Defendant told the officers that he had been convicted of felony forgery a few years earlier, but that the sentencing judge had told him that, if he completed his two years of probation, his conviction would be lowered to a misdemeanor—and that he had completed the probation in 2006. The officers attempted to verify defendant's statement through dispatch, but could not do so. Defendant was arrested and charged with two crimes: unlawful purchase of a firearm, ORS 166.425, and attempted felon in possession of

a firearm, ORS 166.270(1) (felon in possession); ORS 161.405(1) (attempt).[1]

At trial, the state introduced a record of defendant's felony conviction for forgery. Defendant testified that, at his sentencing for the forgery conviction, the judge "explained to me that as of my two-year probation he was sentencing, I would be considered a misdemeanor, my charge would be considered a misdemeanor." The order from defendant's sentencing, which was admitted at trial, stated, "MISD. TREAT. ON COMPLETION OF PROBATION[.]" Defendant completed his probation in May 2006 and testified that he did not believe he had a felony on his record when he tried to purchase the gun.

Defendant asked the court to instruct the jury that, in order to convict him of attempted felon in possession, the jury had to find that he knew he was a felon at the time he attempted the purchase. The trial court denied defendant's request. The jury acquitted defendant of unlawful purchase of a firearm and convicted him of attempted felon in possession. The former crime has a specified culpable mental state: a person commits the crime only if "the person, knowing that the person is prohibited by state or federal law from owning or possessing the firearm * * * purchases or attempts to purchase the firearm." ORS 166.425(1). The felon in possession statute, as noted above, does not specify a culpable mental state.

On appeal, defendant renews his argument. The state responds that, although the reasoning and analysis in *Van Norsdall* have been disavowed, its holding—that the state did not have to prove that the defendant knew he was

---

[1] ORS 166.270(1) provides:

"Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States, who owns or has in the person's possession or under the person's custody or control any firearm commits the crime of felon in possession of a firearm."

ORS 161.405(1) provides:

"A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime."

a felon—is correct and is still the law. We agree with defendant.

## I. STATUTORY BACKGROUND

We begin by noting that ORS 166.270, the felon in possession statute, is not part of the Oregon Criminal Code.[2] Statutes that are outside of the Oregon Criminal Code are treated differently from code statutes for purposes of determining whether they imply culpable mental states and, if so, with respect to which elements. *State v. Jones*, 223 Or App 611, 617, 196 P3d 97 (2008), *rev den*, 345 Or 618 (2009). Statutes outside the criminal code are governed by ORS 161.105(1)(b). That statute provides that the state does not need to prove a culpable mental state if

> "[a]n offense defined by a statute outside the Oregon Criminal Code clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof."

Thus, if the statute defining an offense outside of the criminal code *does* indicate a clear legislative intent to dispense with a

---

[2] ORS 161.005 lists statutes that "shall be known and may be cited as Oregon Criminal Code of 1971." ORS 166.270 is not listed. *But see State v. Wolfe*, 288 Or 521, 525 n 3, 605 P2d 1185 (1980):

"The legislative history indicates that the provision for offenses 'outside the Oregon Criminal Code' was designed to cover the great variety of regulatory statutes that contain provisions for enforcement by criminal prosecution, and particularly to avoid strict liability for offenses potentially punishable by imprisonment. *See* Minutes of the Criminal Law Revision Commission, June 17, 1969, pp 40-42, and September 12, 1969, pp 2-3.

"The sections of ORS chapter 166 dealing with weapons, of which ORS 166.275 is one, were eventually excluded in the process of getting the criminal law revision ready for legislative enactment, but not because they were regarded as extraneous to the criminal code. Thus although they are among those sections that were not made part of the 'Oregon Criminal Code of 1971,' *see* ORS 161.005, it does not necessarily follow that they are 'statutes outside the Oregon Criminal Code' as referred to in ORS 161.105."

*See also State v. Miller*, 309 Or 362, 370, 788 P2d 974 (1990) (emphasis omitted):

"What the Commission was aiming at with the provision that would become ORS 161.105 was the gaggle of miscellaneous offenses located throughout the Oregon Revised Statutes known affectionately as 'the .990 crimes.' These were offenses tacked on to the end of statutory chapters devoted to substantive concerns other than the criminal law; because they normally were located at the end of such chapters, they commonly had section numbers ending in '.990' or '.995.'"

culpable mental state, no mental state is required. If the statute *does not* clearly indicate a legislative intent to dispense with a culpable mental state, then the statute is treated as though it is within the criminal code. *Jones*, 223 Or App at 618. Statutes within the criminal code that, like the felon in possession statute, contain no express culpable mental state at all (as opposed to statutes that express a culpable mental state but do not specify which elements it applies to), are governed by ORS 161.095:

> "(1)   The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which the person is capable of performing.

> "(2)   Except as provided in ORS 161.105, a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

Our inquiry in this case, therefore, moves through the following steps. First, because ORS 166.270 is outside of the criminal code, we must decide whether it evinces a clear legislative intent to dispense with a culpable mental state, or, in other words, a clear legislative intent to establish a strict liability crime. ORS 161.105(1)(b). We did not address that issue in *Van Norsdall*. Because, as explained below, we conclude that there is no such clear intent, we must decide whether the element of being a felon is a "material element of the offense that necessarily requires a culpable mental state." ORS 161.095(2).

## II.   DID THE LEGISLATURE CLEARLY INTEND TO DISPENSE WITH ANY CULPABLE MENTAL STATE REQUIREMENT?

By its terms, ORS 161.105(1)(b) directs us to determine whether a statute contains an implicit culpable mental state by discerning the statute's underlying legislative intent. In doing so, we deploy the usual techniques of statutory interpretation: examination of text and context, as well as recourse to legislative history and, if necessary, maxims of construction. *State v. Gaines*, 346 Or 160, 170-71, 206 P3d

1042 (2009). However, our inquiry into the felon in possession statute is itself informed by the legislative intent underlying the statute that directs us to consider legislative intent—that is, ORS 161.105(1)(b). In other words, in analyzing the felon in possession statute, we are governed by ORS 161.105(1)(b), which instructs us that we are not only looking for indications of what the legislature intended when it enacted ORS 166.270(1), but for *clear* indications. *State v. Eyerly*, 37 Or App 399, 402, 587 P2d 1039 (1978) ("To determine the elements of and possible punishment for an offense defined outside the Criminal Code, it is necessary to consider both the statute defining the offense * * * and the general criminal liability statute[s].").

ORS 161.105(1)(b) was part of the Oregon Criminal Code revision of 1971, and the Commentary to that Code—"a rich source for determination of the drafters' intent," *State v. Garcia*, 288 Or 413, 416, 605 P2d 671 (1980)—called the culpability provisions "[p]erhaps the single most basic part of the Code," and explained:

> "The Commission follows the Model Penal Code in expressing a policy adverse to use of 'strict liability' concepts in criminal law, whenever the offense carries a possibility of sentence of imprisonment.

> "This position relates not only to offenses defined by the criminal code itself, but covers the entire body of state law, so far as penal sanctions are involved. As noted by the Model Penal Code commentators, in the absence of minimal culpability, the law has neither a deterrent nor corrective nor an incapacitative function to perform."

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 11(C) (July 1970). In construing the felon in possession statute, then, we must give effect to the overarching legislative bias against strict liability crimes.

The text of ORS 166.270(1) (set out at note 1, above) provides no indication, much less a clear indication, of an intent to dispense with a culpable mental state. "The mere enactment of a crime without an expressly required culpable mental state is insufficient to establish such a clear

indication." *State v. Cho*, 297 Or 195, 201, 681 P2d 1152 (1984). Nor does the statute provide an affirmative defense for lack of notice, a feature that the court has identified as one indication that the legislature intended that the state, in its case-in-chief, need not prove any culpable mental state. *State v. Buttrey*, 293 Or 575, 583-84, 651 P2d 1075 (1982). The Supreme Court has also noted that the legislature is more likely to dispense with a culpable mental state with respect to one element if other elements carry express culpable mental states, because doing so does not result in a strict liability offense. *State v. Irving*, 268 Or 204, 207, 520 P2d 354 (1974). That is not the case with ORS 166.270, which, as noted, has no express *scienter* requirement at all.

The context of ORS 166.270 includes statutes on a similar subject. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). ORS 166.425(1) is such a statute. It deals with the purchase of a firearm and makes that act unlawful depending on the status of the purchaser, that is, on whether he or she is "prohibited by state or federal law from owning or possessing the firearm." The statute imposes an express knowledge requirement: The act is illegal only if "the person, knowing" of his or her status, makes or attempts to make the purchase. One inference that we can draw from this contextual statute is that the legislature knew how to impose a culpable mental state requirement when it so intended, and it did not do so in ORS 166.270. In light of the overarching legislative preference against strict liability crimes, that inference is a far cry from a clear indication.

Like the text of ORS 166.270, its legislative history provides no clear indication of an intent to create a strict liability crime. The statute was enacted in 1925, at which time it prohibited not only felons, but unnaturalized aliens as well, from possessing firearms. Or Laws 1925, ch 260, § 2. The Criminal Law Revision Commission apparently did not discuss the statute in preparing the Oregon Criminal Code of 1971. Testimony, House Committee on Judiciary, HB 2582, Mar 19, 1975 (statement of Solicitor General W. Michael Gillette). The statute was substantially amended into its

present form in 1975, deleting the references to unnaturalized aliens and creating an exception for persons convicted of only one felony if the felony did not involve a firearm and occurred at least 15 years before the alleged violation. Or Laws 1975, ch 702, § 1. Solicitor General Gillette, offering testimony on behalf of the Oregon District Attorneys Association (the organization that had requested the amendments), informed the committee that "the measure defined what an ex-con is and where the crime was committed. The amendments would make it much harder for a convicted felon to get a gun." Testimony, House Committee on Judiciary, HB 2582, Apr 30, 1975 (statement of Solicitor General Gillette). The statute has been amended in insignificant ways several times since. At no time has any mention of a culpable mental state occurred.[3] Such silence has been interpreted as an indication that the legislature did *not* intend to dispense with a *scienter* requirement. *State v. Pierre*, 30 Or App 81, 86, 566 P2d 534 (1977); *Eyerly*, 37 Or App at 406. On the other hand, in concluding that ORS 813.010, the statute defining the crime of driving under the influence of intoxicants (DUII), did not require proof of a culpable mental state, the Supreme Court seems to have regarded legislative silence, at least in some situations, as evidence that the legislature *did* intend to create a strict liability crime:

> "The present version of DUII had its genesis in the 1975 Motor Vehicle Code, enacted only four years after the Criminal Code. Or Laws 1975, ch 451, § 87. That the legislature reenacted the definition of DUII so close after enacting ORS 161.105, while still omitting any culpable mental state, also provides a proper basis for concluding that the legislature did not intend any such mental element to apply[.]"

*State v. Miller*, 309 Or 362, 370, 788 P2d 974 (1990).

In light of earlier Supreme Court cases demonstrating that the "clearly indicates" requirement and all of the culpable mental state statutes should be stringently construed,

---

[3] The state relies on the legislative history of a 1989 amendment to ORS 166.270(4), which is not at issue in this case. The only changes that the 1989 amendment made to ORS 166.270(1), the statute at issue in this case, were to elaborate on the type of firearm that a felon could not possess and to substitute the word "felon" for the word "exconvict." Or Laws 1989, ch 839, § 4(1).

*Cho*, 297 Or at 201, we believe that the legislative silence in *Miller* would not have led to the conclusion that DUII was a strict liability crime had it not been for another, overriding, factor—a factor that appears to be a unifying theme in the Supreme Court's attempts to discern whether a particular statute shows a clear indication to dispense with a culpable mental state. That theme is this: The legislature is presumed to dispense with a culpable mental state requirement where *imposing* such a requirement would result in a statute that is extremely difficult to enforce. Put another way: The Supreme Court seems to rephrase the question from, "Does this statute clearly indicate the intent to dispense with a culpable mental state?" to, "Could the legislature possibly have intended this statute to *include* a culpable mental state?" Thus, the quoted text from *Miller* regarding legislative silence is called an "additional consideration[ ]." *Id.* at 369. The key paragraph in *Miller,* on the other hand, explains:

> "It seems preposterous that, with the legislative effort to make DUII easier to prove in almost every session over the last two decades, any legislator could ever have intended that a drunken driver could assert the defense that 'I was so drunk I didn't know what I was doing.' In these days of intense pressure on the legislature * * * to get drunken drivers off Oregon highways, and the legislative actions reducing the [blood alcohol content] level for conviction of drunken drivers in Oregon to one of the lowest in the nation, it would be highly unusual for any responsible legislator to intend or publicly assert an intention that DUII requires proof of a culpable mental state."

*Id.* at 368-69. Earlier, in construing ORS 167.232 (1973), a statute creating the crime of "fraudulent sale of imitation drugs * * * to a peace officer," the Supreme Court held that, even though the statute did not express a culpable mental state, it would be absurd to require the state to prove that the defendant knew that the purchaser was, in fact, a police officer. *Irving*, 268 Or at 206-07.

Most recently, in *State v. Rutley*, 343 Or 368, 370, 171 P3d 361 (2007), the court held that ORS 475.999 (1999) did not require the state to prove that the defendant knew that his drug distribution took place within 1,000 feet of "the

real property comprising a public or private elementary, secondary or career school attended primarily by minors." The court based its decision on three factors: "the legislature's obvious intent to protect children from predatory drug dealers by enhancing the penalty for delivery in the vicinity of a school, the grammatical structure of the statute's text, and the nature of the element (no mental state is logically required for a distance element)[.]" *Id.* at 377. Clearly, the first factor alone could not be a clear indication of legislative intent to dispense with a *scienter* requirement; if we could infer such an intent from the seriousness of the legislature's desire to protect victims, every criminal law would impose strict liability. Indeed, the court has always indicated that the need for a culpable mental state requirement *increases* with the seriousness of the crime and its consequences. *E.g.*, *Cho*, 297 Or at 201 (state's substantial interest in enacting statute does not clearly indicate intent to dispense with culpable mental state); *State v. Wolfe*, 288 Or 521, 525 n 3, 605 P2d 1185 (1980) ("The legislative history indicates that the provision for offenses 'outside the Oregon Criminal Code' was designed to * * * avoid strict liability for offenses potentially punishable by imprisonment."). The more important factor, we surmise, was the serious impediment to almost *any* enforcement imposed by a "knowing" requirement for the 1,000 foot element:

> "Defendant's argument, if it applies to the 1,000-foot element, applies equally to all [the elements]. Attaching a culpable mental state of 'knowingly' to each of those requirements—a result that defendant's argument would require—would enable a defendant to defeat the charge by virtue of the state's inability to prove affirmatively defendant's knowledge of the existence of the school, of the nature of the school, or of the composition of the student body. We have no hesitation in concluding that the likelihood that the legislature intended to require the state to prove a defendant's culpable mental state as to that collectivity of school-related requirements is virtually nonexistent."

*Rutley*, 343 Or at 376-77.

Requiring the state to prove that a defendant accused of violating ORS 166.270(1) knew or should have

known that he was a felon would not eviscerate the statute or impede prosecution to the same extent as requiring that a defendant knew he was selling drugs within 1,000 feet of a building that he knew was a school inhabited by what he knew were minors (as in *Rutley*), or requiring that a DUII defendant know that his blood alcohol content is .08 or greater (as in *Miller*). *Rutley*, 343 Or at 376; *Miller*, 309 Or at 368. That is because a defendant cannot logically be expected to have measured his blood alcohol content or his precise distance from a school. On the other hand, a defendant *can* logically be expected to know—or to be remiss in not knowing—that he or she has been convicted of a felony. Defendants can be presumed to have attended their own trials and sentencing proceedings, and to have read (or been exposed to) the charging instruments. Only in a rare case—such as, perhaps, this one—could a defendant make even a credible argument challenging the state's *prima facie* case. In short, this case more closely resembles *Wolfe*, where the Supreme Court held that the state had to prove a culpable mental state to convict an inmate for possessing a knife, and *State v. Andrews*, 174 Or App 354, 27 P3d 137 (2001), where this court held that the state had to prove that the defendant knew that the weapon he was carrying in a public place was loaded. Especially in light of the emphatic legislative and judicial hostility toward strict liability crimes, ORS 161.025(1)(d) (purposes of criminal code include to "limit the condemnation of conduct as criminal when it is without fault"); *Cho*, 297 Or at 200 (noting "legal maxim" that "to punish a person for a crime, the person must have acted with *mens rea* in breaching the terms of an offense"); *Andrews*, 174 Or App at 363 (noting "the Criminal Code's fundamental hostility toward imposing criminal liability without fault"), we conclude that, in enacting and amending ORS 166.270(1), the legislature has never clearly indicated an intent to dispense with a culpable mental state requirement with respect to a person's status as a felon. We therefore must determine whether the state was required to prove that defendant's status as a felon is a "material element of the offense that necessarily requires a culpable mental state." ORS 161.095(2).

### III.   IS DEFENDANT'S STATUS AS A FELON A "MATERIAL ELEMENT OF THE OFFENSE THAT NECESSARILY REQUIRES A CULPABLE MENTAL STATE"?

As has often been noted, deciding whether an element "necessarily requires a culpable mental state" has long vexed Oregon courts. *See, e.g., State v. Blanton*, 284 Or 591, 595, 588 P2d 28 (1978) (the phrase "introduces a confusing appearance of circularity"); *State v. Rutley*, 202 Or App 639, 643, 123 P3d 334 (2005), *aff'd in part, rev'd in part*, 343 Or 368 (2007) ("As the Supreme Court and this court have noted in somewhat more euphemistic terms, that rule, which appears in no other state or federal jurisdiction, is gibberish."); *Andrews*, 174 Or App at 361 (statute has a "tautological quality").

Since we last construed the culpable mental state statutes, ORS 174.020(3) and *Gaines*, 346 Or at 171-72, have changed the courts' approach to statutory interpretation and now allow us to consider a statute's legislative history and to give it the weight that we consider appropriate. We now conclude that our previous understanding of which material elements "necessarily require[ ] a culpable mental state" needs to be modified.

In 1970, the Criminal Law Revision Commission undertook a large scale revision of Oregon's criminal statutes, including the statutes regarding when the state is required to prove a culpable mental state. The resulting statutes were based on the Model Penal Code (MPC). Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 11(C) (July 1970); *State v. Crosby*, 342 Or 419, 428, 154 P3d 97 (2007). MPC § 2.02(1) provides:

> "Except as provided in Section 2.05, a person is not guilty of an offense unless he acted purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense."

The MPC defines "element" of an offense as

> "(9)   * * * (i) such conduct or (ii) such attendant circumstances or (iii) such a result of conduct as

"(a)    is included in the description of the forbidden conduct in the definition of the offense; or

"(b)    establishes the required kind of culpability; or

"(c)    negatives an excuse or justification for such conduct; or

"(d)    negatives a defense under the statute of limitations; or

"(e)    establishes jurisdiction or venue[.]"

Model Penal Code § 1.13(9). The MPC Commentary explains that this definition of element "is useful for the purposes of the procedural provisions, [but] it is obviously too broad for the purpose of the culpability provisions." Model Penal Code § 1.13 comment at 211 (Official Draft and Revised Comments 1985). For purposes of mental culpability, the MPC provides a separate definition for *material* element:

"(10)    'material element of an offense' means an element that does not relate exclusively to the statute of limitations, jurisdiction, venue, or to any other matter similarly unconnected with (i) the harm or evil, incident to conduct, sought to be prevented by the law defining the offense, or (ii) the existence of a justification or excuse for such conduct[.]"

Model Penal Code § 1.13(10). The MPC Commentary further explains that

"[t]he term 'material element' is defined * * * to encompass only matters relating to the harm or evil sought to be prevented by the law defining an offense or to the existence of a justification or excuse for the actor's conduct. Facts that relate to other matters, such as jurisdiction, venue or limitations are not 'material' within this definition."

Model Penal Code § 2.02 comment at 227. Thus, the MPC clearly requires a culpable mental state for each element that relates to the harm or evil sought to be prevented and does not require a culpable mental state with elements pertaining to venue, jurisdiction, statute of limitations, and the like.

The Oregon Criminal Law Revision Commission adopted the MPC's approach, but the drafters were confused

by the MPC's separation of conduct, attendant circumstances, and end result. *See* Model Penal Code § 1.13(9). This confusion is why the Oregon drafters settled on language that is different from what is used in the MPC.

On December 12, 1968, the subcommittee that was assigned to draft the culpable mental state provisions met to discuss the first draft—Article 2 of the proposed criminal code. The draft provided:

> "Except as provided in Section 5 [relating to offenses punishable by fines only], a person is not guilty of a crime unless he acts intentionally, knowingly, recklessly, or with criminal negligence, as the law may require, with respect to the conduct, the result thereof or the attendant circumstances which constitute the material elements of the crime."

Criminal Law Revision Commission Proposed Oregon Criminal Code, Preliminary Draft No 1, Article 2, § 2 (Dec 1968). The terms "conduct," "attendant circumstances," and "result" came from the MPC § 1.13(9) set out above. Minutes, Criminal Law Revision Commission, Dec 18, 1968, 2, 5. But, unlike the MPC, the Oregon drafters did not define "element" or "material element" in the first draft. They agreed, however, to define it later.

Because the first draft did not include a definition of "element" or "material element," as in the MPC, the members of the subcommittee became confused by the concept that only certain conduct, attendant circumstances, or results could be considered "material elements" and could, for that reason, require a culpable mental state. As a result, the subcommittee seemed concerned that the language of this draft expanded the definition of "material element" beyond what was required under the MPC, and included all the facts related to a particular incident, such as the time of day it occurred or who witnessed it. Minutes, Criminal Law Revision Commission, Dec 18, 1968, 8.

One conversation among the subcommittee members highlights this confusion. Senator John Burns, the chairman of the subcommittee, understood "conduct" to include circumstances explicitly described in the definition of

a crime, and, therefore, he believed that "attendant circumstances" were circumstances *other* than those described in the definition of the crime—he believed they were "collateral" events that did not need to be proved beyond a reasonable doubt and did not require a culpable mental state. Minutes, Criminal Law Revision Commission, Dec 18, 1968, 6; Tape Recording, Criminal Law Revision Commission Subcommittee No 1, Dec 18, 1968, Tape 29, Side 2. Professor Courtney Arthur, the drafter of the provisions, tried to illustrate the difference between conduct and attendant circumstances by explaining that, for the crime of statutory rape, sexual intercourse is the "conduct" and the underage status of the victim is the "attendant circumstance." Burns replied, "No. [Her age] is a fact. It's not a circumstance. * * * The age is a material element. It's a fact that has to be proved. It's not an attendant circumstance." Tape Recording, Criminal Law Revision Commission Subcommittee No 1, Dec 18, 1968, Tape 29, Side 2 (statement of Sen John Burns). Burns did not understand that "attendant circumstances" could also be material elements that the state was required to prove—he only understood "attendant circumstances" to mean the circumstances surrounding how the crime was committed as opposed to acts that were explicitly proscribed by the statute.

Other subcommittee members understood that attendant circumstances could be, but were not necessarily, material elements. For example, when Burns said that the underage status of the victim in a statutory rape case was a fact that the state had to prove, and therefore not an attendant circumstance, Don Paillette, the project director of the revision commission, disagreed, saying that the underage status was both an attendant circumstance and a material element. *Id.*

In order to alleviate the confusion, Paillette suggested the subcommittee amend the draft as follows:

"Except as provided in Section 5, a person is not guilty of a crime unless he acts intentionally, knowingly, recklessly, or with criminal negligence, as the law may require, with respect to ~~the conduct, the result thereof, or the attendant circumstances which constitute the~~ **each** material element of the crime."

*See* Minutes, Criminal Law Revision Commission, Dec 18, 1968, 6. Paillette explained that once "material element" was defined in the code, the language would then require a culpable mental state for each material element and, at the same time, would circumvent the confusion regarding the phrase "attendant circumstance." The language of the draft was then amended as Paillette suggested.

On March 4, 1969, the subcommittee met to discuss the second draft of the general culpability provisions. As amended at the prior meeting, section 2(2) provided that "a person is not guilty of a crime unless he acts with a culpable mental state with respect to each material element of the crime." Criminal Law Revision Commission Proposed Oregon Criminal Code, Preliminary Draft No 2, Article 2, § 2(2) (Feb 1969). The new draft, again, did not define "element" or "material element." Paillette explained:

> "Of course, my feeling going back to the minutes of that meeting * * * seems to me that the big hang up was this problem 'material element' of the crime, because the way it was drafted we were in effect saying that conduct and attendant circumstances were material elements and my feeling was that this was one of the things that was causing some problems for the subcommittee. We were calling things material elements that may or may not be material elements at least in the traditional definition of the term. We felt we might be causing some problems if we were going to call some attendant circumstance a material element and require the state to prove something beyond a reasonable doubt. It might be beyond the ability of the [prosecutor] because the nature of some attendant circumstance * * *. These were pretty broad terms, so I tried to write that out of the draft. And in effect not define material elements."

Tape Recording, Criminal Law Revision Commission Subcommittee No 1, Mar 4, 1969, Tape 69, Side 1 (statement of Donald L. Paillette).

One member asked what they should do if they do not define element and material element. Paillette explained that "we know what they mean anyway" and that courts handle these questions all the time:

> "See, in a criminal case now, the court will instruct the jury on the material elements of the crime and the burden is

on the state to prove each material element beyond a reasonable doubt. The court will in fact say, and in this crime of larceny, the elements are that he took and carried away the personal property of another etcetera * * * and, I don't know, it just doesn't seem that this has been a problem for the courts to distinguish what's a material element and what isn't."

*Id.* He further explained that, because he was using "material element" in the "traditional" sense, there was no further need to define the term.

The final concern at the second meeting was whether venue, jurisdiction, and the statute of limitations would be considered material elements, thereby necessitating proof of a culpable mental state. Paillette assured the committee that they were not, and that the final draft would reflect that. *Id.* That response implies that the "traditional" definition Paillette was referring to was the MPC definition of material element—that is, matters relating to the harm or evil sought to be prevented as opposed to matters, such as jurisdiction, venue, or limitations. *See* Model Penal Code § 1.13(10).

On April 18, 1969, Paillette presented the third and final draft of the general culpability statutes to the subcommittee. Section 2(2) had been amended to its current version:

"[A] person is not guilty of a crime unless he acts with a culpable mental state with respect to each material element of the crime that necessarily requires a culpable mental state."

Criminal Law Revision Commission Proposed Oregon Criminal Code, Preliminary Draft No 3, Article 2, § 2(2) (Mar 1969). Paillette explained, "[W]e didn't want to leave any doubt that it was not our intent to require culpability for an element such as venue or statute of limitations or something like that." Minutes, Criminal Law Revision Commission, Apr 18, 1969, 4. Therefore, the added words, "that necessarily requires a mental state," were intended to convey a specific and defined meaning: Every element that did not concern venue, jurisdiction, statute of limitations, or the like, required a culpable mental state.

The commentary to the Oregon Criminal Law Revision Commission Final Report also explains the committee's intent, stating that the phrase "is designed to make it clear that the draft does not require *scienter* with respect to an element relating solely to the statute of limitations, jurisdiction, venue and the like." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 11, 9 (July 1970).

■     From this legislative history, we conclude that, when a statute falls inside the criminal code and does not explicitly prescribe a culpable mental state, or when, as here, the statute falls outside the criminal code and does not reveal a clear indication that the legislature intended to dispense with a culpable mental state requirement, a culpable mental state is required for elements that are relevant to the harm or evil incident to the conduct sought to be prevented by the law defining the offense, and is *not* required for venue, jurisdiction, statute of limitations, "and the like." And indeed, when the Supreme Court first took up the statute, it reached that conclusion. In *Blanton*, the defendant was convicted of unlawfully furnishing marijuana to a minor. The Supreme Court wrote:

> "As the Court of Appeals noted, the qualifying phrase 'that necessarily requires a culpable mental state' * * * introduces a confusing appearance of circularity in the text. The court concluded that the phrase apparently was meant to distinguish those elements defining the substance or quality of the forbidden conduct from others relating, in the explanation of the Criminal Law Revision Commission, 'solely to the statute of limitations, jurisdiction, venue and the like,' and the state offers no contrary explanation. There is no question that the age of the recipient is a material element of the offense * * *."

*Blanton*, 284 Or at 595 (footnote omitted). Therefore, based on the legislative history of ORS 161.095 and ORS 161.115, the phrase "that necessarily requires a culpable mental state" requires us to determine whether the element in question concerns the substance or quality of the crime—the harm or evil sought to be prevented—or whether the element concerns venue, jurisdiction, statute of limitations, or something similar. In this case, we must determine whether

defendant's status as a felon relates to the evil or harm that the legislature enacted the statute to prevent, or whether it is similar to venue, jurisdiction, or the statute of limitations.

We held in *Van Norsdall*, 127 Or App at 305, that "[t]he status of being a felon" is an element that relates to venue, jurisdiction, statutes of limitation and the like and that, therefore, no *scienter* requirement attached to that element. That holding was wrong, as this court recognized in *Andrews*, 174 Or App at 366. We observed that the outcome in *Van Norsdall* rested on the erroneous premise that elements relating to "conduct" were material and required *scienter* while elements relating to "attending circumstances" did not. *Id.* That distinction, we held, could not be reconciled with the legislative hostility to strict liability nor with the Supreme Court's opinion in *Blanton*, where the court held that, in prosecuting a person for furnishing drugs to a minor, the state had to prove that the defendant knew the recipient's age. *Blanton*, 284 Or at 595. Clearly, the age of the recipient could not be characterized as the defendant's "conduct"; rather, it was an "attending circumstance," and a material element requiring a culpable mental state nonetheless. *Id.*

To reconcile the case law with *Blanton* and the applicable statutes, we held in *Andrews*, 174 Or App at 356, that, "when a particular circumstance renders otherwise innocent conduct criminal, the existence of that circumstance is a material element for which the state must prove a culpable mental state, unless there is a clear legislative indication that such proof of *scienter* is not required." That principle also reconciles the case law with the legislative history. *Andrews* holds that the state must prove a culpable mental state with respect to acts or circumstances that transform innocent conduct into criminal conduct. Such acts or circumstances define the harm or evil sought to be prevented by the offense. *Andrews* also holds that the state need *not* prove a culpable mental state with respect to circumstances that do *not* transform innocent conduct into criminal conduct; venue, jurisdiction, statutes of limitations and the like fall into that category. The MPC, *Blanton*, and *Andrews* dichotomies are functionally identical.

As applied to ORS 166.270(1), that principle compels the conclusion that, contrary to what we held in *Van Norsdall*, a person's status as a felon is a material element for which a culpable mental state is necessary. That status goes to the evil at which the statute is directed: firearms in the hands of individuals who have at one time shown an inability to conform to the criminal law and might therefore be considered more dangerous than others. By the same token, the element of being a felon transforms otherwise innocent conduct into a crime; a similarly situated nonfelon may possess or attempt to possess a firearm without violating the law.

In *Andrews*, we "disavow[ed] *Van Norsdall*'s *analysis*" but did not overrule the case itself, because *Andrews* dealt with a Portland City Code provision and focused on an element prohibiting a person from carrying a loaded weapon in public and provided no occasion to evaluate the felon in possession statute in light of its legislative intent. *Andrews*, 174 Or App at 365-66 (emphasis in original). This case now presents that occasion. Our review of the text, context, and legislative history of ORS 166.270(1) requires us to overrule *Van Norsdall* and hold that the court erred by instructing the jury in such a way as to allow it to return a guilty verdict without having found that defendant knew or should have known, when he attempted to purchase the shotgun, that he had been convicted of a felony.

Reversed and remanded.