Argued and submitted July 31, 2012, conviction for resisting arrest reversed; otherwise affirmed October 23, 2013

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## HERBERT HOOVER OLIVE, JR.,
aka Herbert Oliver,
*Defendant-Appellant.*

Multnomah County Circuit Court
091254415; A146922

312 P3d 588

Henry Kantor, Judge.

Neil Francis Byl, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Shannon T. Reel, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

DUNCAN, J.

**DUNCAN, J.**

In this criminal case, defendant appeals a judgment convicting him of resisting arrest, ORS 162.315, and interfering with a peace officer, ORS 162.247. With respect to his resisting arrest conviction, defendant contends that, contrary to our holding in *State v. Toelaer*, 70 Or App 164, 688 P2d 124 (1984), ORS 162.315 requires a person to know that he or she is being arrested. He argues that, in light of the trial court's finding that defendant did not know that he was being arrested, the court erred in convicting him of resisting arrest. We agree. Accordingly, we overrule *Toelaer*, reverse defendant's conviction for resisting arrest, and otherwise affirm.

Defendant was charged with resisting arrest after he was involved in an altercation with several Portland police officers. The case was tried to the court. The state presented, *inter alia*, testimony from one officer that, during the altercation, he told defendant that he was under arrest. In closing argument, the prosecutor argued that the officer's statement, along with testimony by defendant, proved that defendant knew that he was under arrest. In response, defense counsel contended that, when defendant resisted the officers, he did not know that he was under arrest and that, as a result, he lacked the necessary intent to resist arrest.

In rebuttal, the prosecutor contended that, under *Toelaer*, a person can commit the crime of resisting arrest even if the person does not know that he or she is under arrest. Alternatively, the prosecutor reiterated his argument that defendant knew that he was under arrest. The trial court found that defendant did not know that he was under arrest but concluded that that knowledge was not necessary, stating, "I agree with [defense counsel] that the state did not prove beyond a reasonable doubt that the defendant knew he was under arrest, but I agree with [the prosecutor], they don't have to. It's not an element of the crime." The court convicted defendant.

Defendant appeals, contending that the court committed the equivalent of instructional error by concluding that knowledge of the arrest is not an element of the crime

of resisting arrest. In a separate assignment of error, defendant argues that, for the same reason, the court erred in entering the judgment convicting him of resisting arrest.[1]

We review a trial court's construction of a statute for errors of law. *State v. Wilson*, 240 Or App 475, 486, 248 P3d 10 (2011); *see also State v. Andrews*, 174 Or App 354, 359, 27 P3d 137 (2001), *abrogated in part on other grounds by State v. Rutley*, 202 Or App 639, 123 P3d 334 (2005), *aff'd in part and rev'd in part*, 343 Or 368, 171 P3d 361 (2007) (no formal findings by the trial court are required for review of a claim of legal error in a bench trial; instead, "'what matters is only that an appellate court can perform its function on the issue whether the [case] was decided on the right legal premises'" (quoting *State v. Hull*, 286 Or 511, 517, 595 P2d 1240 (1979)) (brackets in *Andrews*)).

Defendant argues that, under ORS 161.095(2), as construed in our opinion in *State v. Rainoldi*, 236 Or App 129, 235 P3d 710 (2010) (*Rainoldi I*), the circumstance that the officer is making an arrest is a "material element of the offense that necessarily requires a culpable mental state." ORS 161.095(2). He contends that the Supreme Court's reversal of our holding in that case, *State v. Rainoldi*, 351 Or 486, 268 P3d 568 (2011) (*Rainoldi II*)—which took place after defendant filed his brief but before oral argument in this case—rested on our analysis of ORS 161.105 rather than our analysis of ORS 161.095(2); consequently, he asserts, despite the reversal, our analysis of ORS 161.095(2) in light of its legislative history applies in this case. Under *Rainoldi I*, defendant contends, *Toelaer* is plainly wrong because its analysis was based on the false premise that, where the statute defining a crime does not specify a culpable mental state for a particular element, no culpable mental state is required for that element.

"[W]e do not lightly overrule our own statutory interpretations. Ordinarily, we regard them as binding precedent

---

[1] In his brief, defendant also assigns error to the trial court's denial of his motion for judgment of acquittal on the resisting arrest charge. At oral argument, he conceded that there was evidence in the record from which a rational trier of fact could find that he knew that he was being arrested and, therefore, that he could not prevail on that assignment. Accordingly, we do not discuss that assignment of error further.

unless they are plainly wrong." *Aguilar v. Washington County*, 201 Or App 640, 648, 120 P3d 514 (2005), *rev den*, 340 Or 34 (2006). As the Supreme Court recently reiterated, however, although the stability and predictability that result from *stare decisis* "'are important values in the law,'"

> "[a]t the same time, this court has an obligation to reach what we regard as a correct interpretation of statutes and rules. Indeed, we are so obliged whether or not the correct interpretation has even been advanced by the parties. *See Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997). Particularly when we 'failed to apply our usual framework for decision or adequately analyze the controlling issue,' we must be open to reconsidering earlier case law."

*Assoc. Unit Owners of Timbercrest Condo v. Warren*, 352 Or 583, 598, 288 P3d 859 (2012) (quoting *Farmers Ins. Co. v. Mowry*, 350 Or 686, 698, 261 P3d 1 (2011)); *see also Hostetter v. Board of Parole and Post-Prison Supervision*, 255 Or App 328, 333-35, 296 P3d 664, *rev den*, 353 Or 787 (2013) (reconsidering a prior interpretation of an administrative rule where, in the prior case, we had not been presented with the argument that the petitioner advanced and had not applied our usual framework for decision to the controlling issue).

In *Toelaer*, as in this case, the defendant argued that, in order to commit the crime of resisting arrest as defined by ORS 162.315, a defendant must know that he or she is under arrest. ORS 162.315(1) (1971) provided, "A person commits the crime of resisting arrest if the person intentionally resists a person known by him to be a peace officer in making an arrest." Based on the text of ORS 162.315, we rejected the defendant's argument. *Toelaer*, 70 Or App at 166. Our analysis consisted, in total, of the following:

> "Defendant's sole assignment of error is the trial court's refusal to give his requested instruction on a purported element of the offense, to-wit: 'That the defendant knew that said peace officer was making an arrest.' *Defendant's knowledge that the officer was making an arrest is not one of the elements specified in ORS 162.315*. Accordingly, it was not error for the trial court to refuse to give the instruction."

*Id.* (emphasis added).

Thus, in *Toelaer*, we concluded that (1) ORS 162.315 does not specify a culpable mental state for the "in making an arrest" element and (2) if the statute defining a crime does not specify a culpable mental state for a particular element, no culpable mental state is required for that element. As explained below, both of those conclusions are wrong. First, ORS 162.315 does specify a culpable mental state for the "in making an arrest" element; the specified "intentionally" culpable mental state applies to the act of "resisting a person * * * in making an arrest." Second, even if ORS 162.315 did not specify a culpable mental state for the "in making an arrest" element, one would still be required; a culpable mental state is required for all elements that relate to "the substance or quality of the forbidden conduct," unless the legislature expressly provides otherwise. *State v. Blanton*, 284 Or 591, 595, 588 P2d 28 (1978).

We reached those incorrect conclusions because we did not adequately analyze ORS 162.315. We undertake that task now, employing the statutory construction methodology prescribed by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009).

We begin with the text of the statute. ORS 162.315(1) now provides, "A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest."

The statute specifies two culpable mental states. It unambiguously provides that the defendant must know of the attendant circumstance that the person resisted is a peace officer or a parole and probation officer. The statute is ambiguous, however, as to the application of the culpable mental state "intentionally." It is possible that the conduct element of the crime is simply "resists a person." In that case, the defendant must intentionally resist a person, and the remaining element of the crime—that the person is making an arrest—has no specified culpable mental state.

A second possibility is that the conduct element of the crime is "resists a person * * * in making an arrest." If

that is the case, the conduct that the defendant must intentionally engage in is not merely resisting a person; instead, the defendant must intentionally resist a person who is taking a specific action—making an arrest.

The legislative history of ORS 162.315 indicates that the latter is the intended construction. ORS 162.315 was enacted as part of the Oregon Criminal Code of 1971. Or Laws 1971, ch 743, § 206; *see* ORS 161.005 (identifying provisions of the Oregon Revised Statutes that may be cited as the "Oregon Criminal Code of 1971"). The provision was drafted and revised in a subcommittee of the Criminal Law Revision Commission, approved by the whole commission, and, eventually, adopted without amendment by the legislature. *See* Or Laws 1971, ch 743, §§ 206, 204; Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 206 (July 1970) (Final Draft and Report).

The first preliminary draft of ORS 162.315 provided:

"A person commits the crime of resisting arrest if:

"(1)  By using or threatening to use violence, physical force or any other means creating a substantial risk of physical injury to any person *he intentionally prevents or attempts to prevent a person* he knows to be a peace officer *from making an arrest.*"

Criminal Law Revision Commission Proposed Oregon Criminal Code, Preliminary Draft No 1, Art 24, § 10 (June 1969) (emphasis added). Before the subcommittee meeting at which that draft was to be discussed, Roger Wallingford, research counsel, redrafted the section to make it consistent with the structure of other sections of the proposed code. Minutes, Criminal Law Revision Commission, Subcommittee No 1, Oct 30, 1969, 7. While redrafting the section, Wallingford decided to rephrase it for clarity although, as he explained to the subcommittee, in the redrafted version, "the substance remain[ed] the same" as in the original. Tape Recording, Criminal Law Revision Commission, Subcommittee No 1, Oct 30, 1969, Tape 86, Side 2 (statement of Roger Wallingford). Among other changes, Wallingford replaced the phrase "prevents or attempts to prevent" with the word "resists":

"A person commits the crime of resisting arrest if he *intentionally resists a person* known by him to be a peace officer *from making an arrest.*"

Criminal Law Revision Commission Proposed Oregon Criminal Code, Preliminary Draft No 2, Art 24, § 10 (Dec 1969) (emphasis added).

Both the subcommittee and the commission approved that version of the section. Minutes, Criminal Law Revision Commission, Subcommittee No 1, Oct 30, 1969, 10; Minutes, Criminal Law Revision Commission, Jan 23, 1970, 21. After commission approval, but before compilation into the Final Draft and Report, the phrase "from making an arrest" was changed, without recorded discussion, to "in making an arrest," presumably in order to make the section grammatically correct. Thus, the version presented to the legislature provided,

"A person commits the crime of resisting arrest if he *intentionally resists a person* known by him to be a peace officer *in making an arrest.*"

Final Draft and Report §§ 206, 204 (emphasis added).

That history indicates that, in the statute as enacted, the mental state "intentionally" applies not simply to resisting a person, but to resisting arrest by the person. The first draft used the text "prevents or attempts to prevent a person * * * from making an arrest" to describe the necessary conduct. In context, the verb "prevent" requires a prepositional phrase beginning with "from": An actor prevents a person *from taking an action.* A person cannot intentionally prevent or attempt to prevent a person; that phrase is incomplete. The only plausible reading of the original language is that a person must intentionally prevent or attempt to prevent a person known to be a police officer *from making an arrest.* Thus, in the first draft, the mental state "intentionally" applies to the whole phrase "prevents or attempts to prevent a person * * * from making an arrest"; it cannot apply only to the verb.

Although the first draft was modified, the drafter told the subcommittee that the modifications were not intended to alter the substance of the provision. That statement is confirmed by the text of the second draft—the

one approved by the subcommittee and, later, by the commission—which provided that a person must "intentionally *resist*[] a person \* \* \* *from making an arrest*." (Emphasis added.) Although the text is grammatically incorrect, the inclusion of "from making an arrest" makes clear that the act of resisting a person, alone, is not the prohibited conduct. "[F]rom making an arrest" can serve no role in the sentence except that of a prepositional phrase modifying "resists." Contrary to the reading necessitated by the first of the two possible understandings of ORS 162.315(1) set out above, "from making an arrest" cannot stand alone as an additional circumstance element.

The silent change of "from making an arrest" to "in making an arrest" does not change our conclusion. Because the change was made without formal approval by the commission, it cannot have been intended as a substantive change; instead, it merely fixed a grammatical error. Accordingly, we conclude that, in the statute as enacted, "intentionally" describes the required mental state for the conduct of "resist[ing] a person \* \* \* in making an arrest." That is, a person must have the intent not only to resist a person, but to resist a person in making an arrest.

To form the intent to resist another person in making an arrest, a person must know that an arrest is taking place. ORS 161.085(7) defines "intentionally." As relevant here, it provides that "intentionally" means that "a person acts with a conscious objective \* \* \* to engage in the conduct so described." ORS 161.085(7). Thus, to commit the crime of resisting arrest, a person must act with a conscious objective to resist another person in making an arrest. That requires knowledge of the arrest.

As the state points out, the commentary states that "[t]wo culpability elements are found in subsection (1): The actor's conduct must be intentional and must be accompanied by knowledge that the person resisted is a peace officer." Commentary, Final Draft and Report §§ 206, 204. That is consistent with our understanding of the text. Because, as explained above, "intentionally" applies to the phrase "resists a person \* \* \* in making an arrest," there are only two specified culpable mental states: The defendant must

intentionally resist a person in making an arrest, and he or she must know that the person arresting him or her is an officer. Thus, ORS 162.315 specifies a culpable mental state in connection with the "in making an arrest" element.

We pause to note that, contrary to our conclusion in *Toelaer*, even if ORS 162.315 did not specify a culpable mental state in connection with the phrase "in making an arrest," one would still be required. Under ORS 161.095(2), a culpable mental state is required for all elements that relate to "the substance or quality of the forbidden conduct" of crimes defined by the Oregon Criminal Code. *Blanton*, 284 Or at 595; *see also Rainoldi I*, 236 Or App at 147 (under ORS 161.095(2), "a culpable mental state is required for all elements that are relevant to the harm or evil incident to the conduct sought to be prevented by the law defining the offense"; the only elements that do not require culpable mental states are those that relate solely to "venue, jurisdiction, statute of limitations, and the like" (internal quotation marks omitted)). Thus, even if, as we concluded in *Toelaer*, ORS 162.315 did not specify a culpable mental state for the "in making an arrest" element, one would be required under ORS 161.095(2).[2]

_____

[2] When the Oregon legislature enacted the 1971 Criminal Code, it made a policy choice to follow the Model Penal Code approach to culpability. Final Draft and Report, Commentary to §§ 7-11, 10; *see* I Model Penal Code and Commentaries (Official Draft and Revised Comments 1985) (MPC) (setting out the Model Penal Code as adopted by the American Law Institute in 1962). Under the MPC, a culpable mental state is required for all elements that relate to, *inter alia*, "the harm or evil sought to be prevented by the law defining an offense * * *." *See* MPC § 2.02(1) (requiring culpable mental states for material elements); MPC § 1.13(10) (defining material elements). The MPC approach is based on the principle that, to be criminally liable, a person must know or have reason to know "the facts that give his conduct its offensive character." MPC § 1.13 comment at 211. To that end, the MPC drafters created a system under which, as a default rule, a culpable mental state is required for every element except those relating solely to "the statute of limitations, jurisdiction, venue," and other similar matters. MPC § 1.13(10).

The Oregon legislature adopted a similar default rule, codified as ORS 161.095(2). As the Supreme Court held in *Blanton*, "the policy adopted by the legislature is to require a culpable mental state with respect to *each element in the definition of an offense*, with the exceptions stated in ORS 161.105 [relating to violations and noncode crimes]." 284 Or at 594 (emphasis added); *see also* Tape Recording, Criminal Law Revision Commission, Subcommittee No 1, Dec 18, 1968, Tape 29, Side 1 (statement of Courtney Arthur) (under the code, culpable mental states would be required not only for each crime, but for each element of a crime; they would be required for all elements that go to "the heart of the criminal conduct").

Finally, we consider the appropriate remedy. Relying on the trial court's finding of fact that defendant did not know he was being arrested, defendant seeks reversal of his conviction. By contrast, the state contends that, if we conclude that defendant's view of ORS 162.315 is correct, we should reverse and remand for a new trial because there was evidence from which a trier of fact could conclude that defendant knew that he was being arrested. The state reasons that, had it known of the importance of defendant's knowledge that he was under arrest, it could have litigated the issue more thoroughly.

Defendant has the better argument. The state and the court were aware of, and responded to, defendant's claim that the state had to prove that he knew that he was under arrest. The issue was fully litigated, both as a factual

As relevant here, ORS 161.095(2) provides, "[A] person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state." As explained in *Rainoldi I*, the legislative history of ORS 161.095(2) establishes that its drafters used the term "material element" to refer to all of the facts that the state is required to prove beyond a reasonable doubt in order to convict a defendant and then they added the phrase "that necessarily requires a culpable mental state" to make it clear that the draft does not require *scienter* with respect to an element relating solely to the statute of limitations, jurisdiction, venue, and other similar procedural prerequisites to prosecution. *Rainoldi I*, 236 Or App at 141-47. Thus, under ORS 161.095(2), unless the legislature expressly provides otherwise, a culpable mental state is required for all facts that the state must prove beyond a reasonable doubt to convict a defendant except those that relate solely to the statute of limitations, jurisdiction, venue, or other procedural prerequisites to conviction.

ORS 161.095(2) reflects the legislature's policy choice to reserve for itself the opportunity to decide, in the first instance, whether to dispense with a culpable mental state for a particular substantive element, as well as the legislature's corresponding acceptance of the obligation to make express any decision to dispense with a culpable mental state for such an element. If the legislature does not expressly dispense with a culpable mental state, courts are to require one. The legislature chose that approach to protect against the possibility that courts would erroneously construe an element as a strict liability element.

ORS 161.095(2) also serves a practical purpose. As the drafters understood, the rule relieves the legislature of the obligation to specify the applicable mental state (or states) for each element of an offense. Tape Recording, Criminal Law Revision Commission, Subcommittee No 1, Dec 18, 1968, Tape 29, Side 1 (statement of Courtney Arthur) (the culpability provisions include rules of construction for inserting culpable mental states when the definition of an offense does not specify them).

Thus, the fact that a statute defining a crime within the Criminal Code does not specify a culpable mental state does not mean that one is not required. To the extent that *Toelaer* suggests otherwise, it is incorrect.

and legal matter. The state presented evidence regarding whether defendant knew that he was under arrest, and the state used that evidence to argue, in both its closing and rebuttal arguments, that it had proved that defendant knew he was under arrest. Despite that evidence and argument, the trial court found that defendant did not know that he was under arrest, and we are bound by that finding. *See State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

In summary, upon reexamination, we conclude that *Toelaer* is "plainly wrong," *Aguilar*, 201 Or App at 648, and that, for a conviction under ORS 162.315, the trial court, sitting as the trier of fact in this case, had to find that defendant knew that he was under arrest. Because the court found that defendant did not know that he was under arrest, defendant had to be acquitted of resisting arrest.

Conviction for resisting arrest reversed; otherwise affirmed.