Argued and submitted October 20, 2020, affirmed March 16, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSIE CHRISTY ANN PROPHET,
*Defendant-Appellant.*

Harney County Circuit Court
18CR84172; A171101

507 P3d 735

Defendant appeals a judgment of conviction for resisting arrest, ORS 162.315, arguing that the trial court erred by refusing to deliver her proposed jury instruction stating that an individual must intentionally create a substantial risk of harm to be convicted of resisting arrest. *Held*: For statutes within the Criminal Code, every element other than venue, statute of limitations, and the like requires a culpable mental state. ORS 161.095(2). For statutes that contain an explicit mental state, that mental state applies to each nonprocedural element of the crime unless the text, context, and legislative history are clear that the legislature intended otherwise. ORS 161.115(1). Regarding the resisting arrest statute, ORS 162.315, the element of creating a substantial risk of injury requires a mental state, but evidence of legislative intent affirmatively rebuts the presumption that "intentionally" should be that mental state.

Affirmed.

W. D. Cramer, Jr., Judge.

Stacy M. Du Clos, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant was convicted of resisting arrest, ORS 162.315, after attempting to prevent a police officer from arresting her for driving under the influence of intoxicants. She appeals, arguing that the trial court erred in refusing to deliver her proposed jury instruction stating that an individual must intentionally create a substantial risk of harm to be convicted of resisting arrest.[1] We conclude that the trial court did not err in refusing to give defendant's proposed instruction because ORS 162.315 does not require that a defendant intentionally created a substantial risk of harm. Accordingly, we affirm.

## I.   FACTUAL BACKGROUND

The relevant facts are undisputed. At 4:00 p.m. on April 11, 2018, Oregon State Police Trooper Held was dispatched to locate a silver Toyota Camry that was reportedly being driven by someone under the influence of intoxicants. Held located the vehicle parked on the shoulder of the road between Burns and John Day, observing that the engine was still running, and defendant was asleep in the driver's seat. Held knocked on the window to awaken defendant and asked her a few questions, which defendant answered politely. However, Held observed that defendant's movements were slow and that she had watery, bloodshot eyes, and droopy eyelids—all indicators of alcohol impairment.

Held asked defendant to perform field sobriety tests, at which point defendant's demeanor changed "drastically." Defendant appeared noticeably more upset and began to alternate between cursing loudly and sitting on the ground crying. Due to defendant's irritability, Held began to suspect that she was under the influence of methamphetamine rather than alcohol and informed her that she was under arrest for driving under the influence of intoxicants. Held approached defendant and attempted to put her hands behind her back, but she became rigid and attempted to pull her arm closer to her body and away from Held. Held warned defendant that he would consider anything further to be resisting, but defendant continued to scream "[n]o"

---

[1] We reject defendant's remaining assignment of error without discussion.

and that she "wasn't doing this." With the help of Harney County Sherriff's Deputy Nisbet, who had just arrived on scene, Held attempted to force defendant down to her knees using a "modified arm bar" technique so that he could place handcuffs on her. Although defendant continued to try and pull away, the technique succeeded, and Held was able to complete the arrest. As Held and Nisbet attempted to walk defendant over to the patrol car, defendant dragged her toes on the pavement, forcing them to carry her.

After a search incident to arrest yielded drug paraphernalia that tested positive for methamphetamine residue, the state charged defendant with both possession of methamphetamine, ORS 475.894 (2018),[2] and resisting arrest, ORS 162.315. At trial, defendant requested a jury instruction that, to be convicted of resisting arrest, the jury had to find that she acted "with a conscious objective to create a substantial risk of physical injury to any person." The trial court refused to give defendant's proposed instruction, however, explaining that the statute does not require proof that defendant intended to create a substantial risk of physical injury. Rather, the court reasoned, the intent requirement applies only to the statute's conduct element: "use or threatened use of violence, physical force or any other means." Defendant was later convicted of resisting arrest.

On appeal, defendant assigns error to the trial court's refusal to give her proposed instruction. She argues that ORS 162.315 requires proof that defendant intended to create a substantial risk of injury and that she was therefore entitled to have her proposed jury instruction given.

## II.   STANDARD OF REVIEW

We review a trial court's jury instructions for legal error. *State v. Harper*, 296 Or App 125, 126, 436 P3d 44 (2019). "A trial court commits reversible error when it incorrectly instructs the jury on a material element of a claim or defense and that instructional error permits the jury to reach a legally erroneous result." *Id.*

---

[2] *Amended by* Ballot Measure 110 (2020); Or Laws 2021, ch 591, §§ 36, 39.

### III.   ANALYSIS

Under ORS 162.315, a person may not "intentionally resist" someone "known by the person to be a peace officer or parole and probation officer in making an arrest." Paragraph (2)(b) defines "resist" in relevant part as:

> "the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer."

ORS 162.315(2)(b). Here, the parties dispute to which portions of that definition the modifier "intentionally" applies.

Defendant argues that the intent requirement in ORS 162.315 applies to each part of the definition of resisting: that a defendant must (1) intentionally use or threaten to use violence, physical force, or any other means to (2) intentionally create a substantial risk of physical injury to any person. That is evident, in defendant's view, for two reasons. First, conduct can only constitute "resisting" if it satisfies the second part; that is, if it creates a substantial risk of physical injury to any person. Thus, the legislature likely intended the mental state of intent to apply to both parts of the prohibited conduct. Second, even if the legislature had not specifically intended the intent requirement in ORS 162.315 to apply to the creation of a substantial risk of physical injury, it is nevertheless required by Oregon's statutory scheme governing the construction of statutes with respect to the requisite mental state.

In response, the state argues that defendant's interpretation is inconsistent with the text of ORS 162.315, which specifies that behavior "clearly intended to prevent being taken into custody" violates the statute regardless of whether defendant intends to create any risk of physical injury. The state contends that its interpretation is further bolstered by legislative history, where prior drafts of the statute more clearly indicated that the intent requirement was meant to apply only to the act of preventing defendant from being taken into custody—not to the creation of a risk of injury. To resolve the issue, we must answer two questions: does the element of creating a substantial risk

of injury require a culpable mental state, and if so, is that mental state intentionally?

A.   *Overview of Culpability Provisions*

Determining which culpable mental state attaches to which elements of a crime is a "chronically vexing problem." *State v. Schodrow*, 187 Or App 224, 228, 66 P3d 547 (2003). The problem largely stems from the interaction of two different sets of statutes governing the analysis. First, as always, we construe the statute defining the crime to "pursue the intention of the legislature if possible." ORS 174.020. However, for the purpose of construing the requisite mental state in criminal statutes, the legislature has also supplied a separate set of default rules which, "[a]s the courts have repeatedly pointed out since 1978, * * * are confusing." *State v. Ruggles*, 238 Or App 86, 89, 242 P3d 643 (2010) (citing *State v. Blanton*, 284 Or 591, 595, 588 P2d 28 (1978)).

Those general culpability statutes for the most part reflect the legislature's policy choice to "use the Model Penal Code (MPC) approach to culpability." *State v. Owen*, 369 Or 288, 309-10, 505 P3d 953 (2022). A key objective of the Model Penal Code (MPC) is to "limit the condemnation of conduct as criminal when it is without fault." ORS 161.025 (1)(d); Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 11, 11 (July 1970) ("The Commission follows the Model Penal Code in expressing a policy adverse to use of 'strict liability' concepts in criminal law, whenever the offense carries a possibility of sentence of imprisonment."). At its core, "[t]he MPC approach is based on the principle that, to be criminally liable, a person must know or have reason to know 'the facts that give his conduct its offensive character.'" *State v. Olive*, 259 Or App 104, 113 n 2, 312 P3d 588 (2013) (citing MPC § 1.13 comment at 211). As a result, the MPC requires, and Oregon adopted, a culpable mental state for "each material element" of the crime. *Id.*; ORS 161.095(2).

Oregon's culpability statutes are the legislature's attempt to effectuate the general goal of requiring a culpable mental state for each of a crime's material elements. Under ORS 161.095(2), "a person is not guilty of an offense unless the person acts with a culpable mental state with

respect to each material element of the offense that necessarily requires a culpable mental state." That statute creates two questions: (1) What are the "material elements that necessarily require a mental state"?; and (2) What "culpable mental state" should apply to those elements?[3]

Turning to the second question first, the legislature supplied statutory default rules to aid in determining which mental state to apply. ORS 161.115. Those rules differ depending on whether a criminal statute contains an explicit mental state, governed by ORS 161.115(1), or not, governed by ORS 161.115(2). If a statute defining a criminal offense explicitly provides a mental state, that mental state typically applies to "each material element of the offense that necessarily requires a culpable mental state." ORS 161.115(1); *State v. Simonov*, 358 Or 531, 538, 368 P3d 11 (2016) ("If a statute defining an offense in the Criminal Code includes a single mental state 'but does not specify the element to which it applies, the prescribed culpable mental state applies to each material element of the offense.'").

If the statute defining a criminal offense does not contain an explicit mental state, we must assess which mental state to apply by evaluating the type of element at issue. ORS 161.115(2); ORS 161.085(7) - (10). Typically, "'conduct' elements require proof of an intentional or knowing mental state, 'result' elements require proof of an intentional, reckless, or criminally negligent mental state, and 'circumstance' elements require proof of a knowing, reckless, or criminally negligent mental state." *Simonov*, 358 Or at 539-40. Determining whether an element is a circumstance, conduct, or result element "ultimately is a matter of legislative intent." *Id*. at 546.

---

[3] Although not at issue here, the same analysis applies to statutes outside the Criminal Code that impose criminal liability unless the legislature clearly indicates an intent to dispose of the mental state requirement. *See* ORS 161.105(1) (a culpable mental state is not required if "[a]n offense defined by a statute outside the Oregon Criminal Code clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof"); *see also State v. Rainoldi*, 351 Or 486, 491, 268 P3d 568 (2011) (describing analysis for crimes outside the Criminal Code as a "sequence" where it is first determined whether the legislature intended to dispose of the mental state requirement and then determined, in the same manner as for statutes within the Criminal Code, which mental state applies to which element).

The remaining question under ORS 161.095(2) is: What are the elements that "necessarily require a mental state"?

B. *Determining Which Are the "Material Elements that Necessarily Require a Mental State"*

Oregon appellate courts have been inconsistent when determining what are the material elements of the offense that necessarily require a culpable mental state. The difficulty stems from the language of ORS 161.115(1) and ORS 161.095(2), requiring the application of a culpable mental state for "each material element of the offense that necessarily requires a culpable mental state." That "tautological" phrase "introduces a confusing appearance of circularity in the text." *State v. Andrews*, 174 Or App 354, 361, 27 P3d 137 (2001), *overruled in part on other grounds by State v. Rutley*, 202 Or App 639, 645, 123 P3d 334 (2005) (musing that the phrase "has bedeviled us"); *Blanton*, 284 Or at 595; *see also Rutley*, 202 Or App at 643, *aff'd in part, rev'd in part*, 343 Or 368, 171 P3d 361 (2007) ("[T]hat rule, which appears in no other state or federal jurisdiction, is gibberish.").

Like the question of which mental state to apply, the question of which elements require culpable mental states has, at times, been treated differently when a statute contains an explicit mental state and when it does not. For statutes that do not contain a mental state, the Supreme Court has clarified the analysis by setting out several "core principles." *State v. Haltom*, 366 Or 791, 797-99, 472 P3d 246 (2020) (quoting *Simonov*, 358 Or at 537-40). First, the statute defining the offense, read with the assistance of the general culpability provisions, is the source of the appropriate mental state. *Id*. Second, a culpable mental state is required for each material element of the crime except for those relating to the statute of limitations, jurisdiction, venue, and the like. *Id*. To determine which mental state to apply, courts look to the "default" rules contained in ORS 161.085 as a "guideline." *Id*. at 802.

As discussed above, the default rule governing statutes without a mental state requires an evaluation of the type of element at issue—conduct, circumstance, or result. *Id*. at 798-99. To determine the appropriate mental

state, the "initial[] focus" is on whether the legislature that enacted the criminal statute intended the element at issue as a "circumstance or as part of the conduct that the statute proscribes." *Id*. at 802. After reviewing the legislative history of the statute defining the criminal offense to answer the question of what type of *element* the legislature intended, the court next reviews the same history to look for any evidence of which *mental state* the legislature intended to attach. *Id*. That evidence "should then be considered to confirm or rebut any tentative conclusion reached under the default rule analysis." *Id*. Thus, despite the existence of the "default" culpability rules such as ORS 161.115(2), the question of the appropriate mental state to apply is ultimately a matter of the intent of the legislature enacting the criminal statute. *Id*. at 806.

Left unresolved by *Simonov* and *Haltom* was whether that analysis of which are the "material elements that necessarily require a mental state" is the same for statutes that contain an explicit mental state. The Supreme Court has recently answered that question in the affirmative. *Owen*, 369 Or at 316-17. But this court's case law has, at times, taken various analytic approaches to determining which elements are material when a statute contains an explicit mental state.

The conflicting body of case law, summarized below, appears to stem from the requirement of ORS 161.115(1) that any explicit mental state must apply to "each material element of the offense that necessarily requires" one. As described below, in the face of legislative history revealing that the legislature did not intend an explicit mental state to apply to a circumstance or result element, courts have treated the phrase "element that necessarily requires a mental state" as malleable when necessary to effectuate legislative intent. Such treatment cannot survive after *Simonov*, *Haltom*, and *Owen*.

C. *Background of Determining Material Elements for Statutes that Contain an Explicit Mental State*

Nearly 50 years ago, the Supreme Court determined that the framework described in *Simonov* applied

to statutes that contain an explicit mental state. Without much analysis, the court reasoned that the phrase in ORS 161.115(1) "necessarily requires a culpable mental state" appeared to create a distinction based on whether the element at issue is one that "defin[es] the substance or quality of the forbidden conduct" or relates "solely to the statute of limitations, jurisdiction, venue and the like." *Blanton*, 284 Or at 595. The court simply observed: "The [C]ourt [of Appeals] concluded that the phrase apparently was meant to distinguish those elements defining the substance or quality of the forbidden conduct from others relating, in the explanation of the Criminal Law Revision Commission, 'solely to the statute of limitations, jurisdiction, venue and the like,' and the state offers no contrary explanation." *Id*.

Subsequent decisions quickly began expanding the types of elements that do *not* require proof of a culpable mental state despite the language of ORS 161.115, moving toward an approach that distinguished "attending circumstances" as ones that do not require a mental state. In *State v. Van Norsdall*, for example, we explained that Oregon's statute prohibiting felons from possessing firearms does not require proof that defendant knew that he or she was a felon. 127 Or App 300, 305, 873 P2d 345, *rev den*, 320 Or 131, *and rev den*, 320 Or 131 (1994), *overruled by State v. Rainoldi*, 236 Or App 129, 235 P3d 710 (2010). We reasoned that the status of being a felon is an "attending circumstance[ ]" more like "venue, jurisdiction, statute of limitations and the like" because it "exist[s] outside the actor's state of mind." *Id.* at 304-05; *see also State v. Walker*, 140 Or App 472, 477-78, 915 P2d 1039 (1996) (for purposes of delivering a controlled substance within 1,000 feet of a school, no culpable mental state is required with respect to distance from school because the location of the offense is "an attendant circumstance of the underlying criminal conduct of delivery of a controlled substance").

Recognizing that we were beginning to deviate from the distinction set out in *Blanton*, in *State v. Engen*, we set about reexamining prior decisions in an effort to clarify the analysis. 164 Or App 591, 597-603, 993 P2d 161 (1999), *rev den*, 330 Or 331 (2000). We observed that, although the approach has varied at times, "the most consistent theme

has been a search for legislative intent: Did the legislature intend to require proof of a culpable mental state with respect to a particular material element?" *Id.* at 603. Accordingly, we explained, the inquiry reduces to an examination of the statute's text, context, and legislative history according to the standard statutory construction methodology. *See id.* at 603-04. Applying our new test, we concluded that Oregon's statute prohibiting possession of a controlled substance did not require proof that defendant knew the specific type of controlled substance possessed because the legislature did not intend it to. *Id.* at 609.

The following year, we again attempted to clarify the analysis when evaluating an ordinance prohibiting a person from carrying a firearm in Portland city limits. *Andrews*, 174 Or App 354. "Disavow[ing]" the distinction of "attendant circumstances," we acknowledged that "[f]or nearly 30 years, we and the Supreme Court have struggled *** in attempting to develop a principled approach as to which elements of criminal offenses require culpable mental states and which do not," leading to a "patchwork of appellate decisions [that] has not been entirely consistent." *Id.* at 361-62, 365 (internal quotation marks omitted). Despite the inconsistency in the case law, we were able to derive one "clear principle" that "a circumstance [that] transforms otherwise innocent conduct into criminally culpable conduct" is a material element necessarily requiring a culpable mental state. *Id.* at 362. We also observed that, at least for crimes outside the Criminal Code and subject to the provisions of ORS 161.105(1)(b), that principle does not apply if "there is a clear indication of legislative intent to dispense with any culpable mental state requirement." *Id.* (internal quotation marks omitted).

That "principle," as well as *Engen*'s focus on legislative history, was short-lived, as "neither ha[d] ever been applied in a subsequent case." *Rutley*, 202 Or App at 645. Three years later in *Schodrow*, we again changed the analysis when evaluating whether, to commit the crime of unlawful possession of a firearm, the defendant must know that the object possessed is a firearm. 187 Or App at 228. Rather than follow *Engen* and examine the legislative intent behind the statute defining the offense, or follow *Blanton*

and decide whether that element relates solely to statute of limitations, venue, and the like, we simply declined to enter the "thicket of case law" surrounding the statutes governing the construction of mental culpability requirements. *Id.* at 229. Instead, we concluded that the statute itself provided a complete answer by prescribing a culpable mental state of "knowingly." *Id.* We explained that, under the definition provided in ORS 161.085(8), acting "knowingly" means acting with "an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists." *Id.* at 230. Thus, because carrying "a firearm" is part of "the nature of the conduct or a circumstance described by the statute, a person must be aware that the object he or she is carrying is a firearm." *Id.* Anything less "would render the prescribed culpable mental state a nullity and would effectively convert the crime into a strict liability offense." *Id.*

Over the next several years, we regularly applied the *Schodrow* methodology to cases with the express mental state of "knowingly" rather than interact with the phrase "material element that necessarily requires a culpable mental state."[4] In *State v. Dixon*, we concluded that the crime of permitting a minor to enter a place with drug activity required that the defendant was aware that the person was a minor because age was "a necessary circumstance of the offense" and therefore the mental state of knowingly required an awareness of it. 191 Or App 503, 508, 83 P3d 385 (2004). In *State v. Lane*, we concluded that a defendant cannot be convicted of escape from a correctional facility, ORS 162.155(1)(c), without demonstrating that he had an awareness of a necessary circumstance of the offense—that is, that what he escaped from was, in fact, a correctional facility. 198 Or App 173, 108 P3d 20 (2005).

In *State v. Jones*, we again determined that "material element that necessarily requires a mental state" was

_____

[4] At times, we framed the inquiry as a grammatical one that still did not require an evaluation of whether an element was a material one necessarily requiring a mental state. *See State v. Travalini*, 215 Or App 226, 233, 168 P3d 1159 (2007), *rev den*, 344 Or 110 (2008) ("As a matter of grammar * * * it is not at all clear how far down the sentence the word 'knowingly' is intended to travel."); *see also Schodrow*, 187 Or App at 229-30 (quoting Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* § 27, 193 (1972)).

flexible enough to effectuate the intent of the legislature enacting the criminal offense. 223 Or App 611, 621, 196 P3d 97 (2008), *rev den*, 345 Or 618 (2009). In that case, we were called upon to determine whether the explicit mental state of intent in the first-degree theft statute, ORS 164.055, applies to the element that the value of the property stolen is $750 or more.[5] Rather than simply apply the statute's explicit mental state to that nonprocedural element, we opted instead to examine the text, context, and legislative history of the theft statute to conclude that the value of the object stolen was not a "material element of the offense that necessarily requires a culpable mental state." *Jones*, 223 Or App at 619. We noted that, grammatically, the intentional mental state immediately preceded and modified only the act of "taking, appropriating, obtaining, or withholding property from an owner" in ORS 164.015. *Id*. at 620. Moreover, requiring proof that defendant intended to steal property worth $750 or more would work against the statute's "obvious legislative purpose" and impose similar requirements on other parts of the statute that would not make sense. *Id*. at 620-21 (explaining that requiring intent to steal property worth $750 would impose similar requirements for other prongs of the statute, such as requiring defendant to specifically intend to steal a "livestock animal" or steal property during a "catastrophe").

In *Rainoldi*, we reexamined the "thicket" of case law in light of the then-recent revisions to our statutory construction methodology that permitted consideration of legislative history regardless of whether the text of a statute is ambiguous. 236 Or App at 141 (citing *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)). We reconsidered the same issue as *Van Norsdall* and came to the opposite conclusion, that a defendant must know they are a felon to commit the crime of being a felon in possession of a firearm. *Rainoldi*, 236 Or App at 149. Looking for the first time to the legislative history of ORS 161.095, we explained that the drafters intended the phrase "material element of the offense that necessarily requires a culpable mental state" to encompass all elements "that are relevant to the harm or evil incident

_____

[5] The requisite value has subsequently been raised to $1000 by Or Laws 2009, ch 16, § 3.

to the conduct sought to be prevented" by the statute. *Id.* at 147. By contrast, the phrase was not meant to include elements relating solely to "venue, jurisdiction, statute of limitations, and the like." *Id.*[6]

That tortured case law suggests that one fundamental question remained when reviewing cases that are encompassed by ORS 161.115(1) as opposed to ORS 161.115(2): Did the rule that any nonprocedural element is a material element that necessarily carries a mental state eliminate any consideration of the intent of the legislature enacting the criminal statute if that statute specifies a mental state?

D.   *Construction of ORS 161.115(1)*

As discussed above, ORS 161.095(2) implements the MPC's default imperative that every material element in every criminal offense carry a mental state. As recently clarified in *Owen*, the identical language in ORS 161.115(1) is not to be interpreted differently. The same test applies to every criminal statute whether or not that statute contains an explicit mental state: an element is material and requires a culpable mental state unless it relates solely to the statute of limitations, jurisdiction, venue, or similar matters. *Owen*, 369 Or at 316-17. That interpretation comports with the legislative intent to follow the MPC approach of requiring a culpable mental state for all nonprocedural elements of a crime, whether or not the legislature explicitly provided one. *Id.* at 321.

To the extent that our conflicting and inconsistent case law interpreting the first-degree theft statute suggests that some nonprocedural elements are not "material," and therefore carry no mental state at all, we disavow that analysis. *See e.g.*, *State v. Stowell*, 304 Or App 1, 9, 466 P3d 1009 (2020) (citing *Jones*, 223 Or App at 620) (reasoning that

---

[6] The Supreme Court ultimately reversed our decision in *Rainoldi*, but it did so on the ground that the legislature had clearly intended to dispense with a mental state requirement for ORS 166.270, an offense outside the Criminal Code. For that reason, it did not address whether a particular element was a material element of the offense that necessarily required a culpable mental state. *See Rainoldi*, 351 Or at 506 ("Because we conclude that the legislature's intentions are clear in that regard, it is not necessary for us to examine whether proof of a culpable mental state is required under ORS 161.095(2).").

the element of value of the stolen goods in the theft statute is not "material" and therefore does not require a culpable mental state).[7] All nonprocedural elements for crimes within the Criminal Code carry a mental state.

As described in *Simonov* and *Haltom*, if a statute does not provide an explicit mental state, courts must sift through legislative intent relating to both the type of element at issue and the legislature's desired mental state. As explained below, ORS 116.115(1) does not preclude consideration of whether the legislature intended the explicit mental state to apply to each nonprocedural element of the crime, as is made clear by the history of the provision.

Like the rest of Oregon's culpable mental state statutes, ORS 161.115 traces its roots back to the 1971 revision of the Criminal Code drafted by the Criminal Law Revision Commission. Although discussion of the statute during the commission's meetings was relatively brief, multiple committee members indicated that the provision's primary function was to "provide against bad drafting techniques." Tape Recording, Criminal Law Revision Commission, June 17, 1969, Tape 68, Side 1 (statements of Professor George Platt and Donald Paillette). Professor Platt in particular explained that ORS 161.115(1) was specifically directed toward resolving any ambiguity in the statute about to which elements a specified mental state applies:

> "What happens sometimes in states is the crime will be in a state of disarray. 'It's against the law to knowingly A and B and C' without repeating the word 'knowingly' before B and C. It becomes ambiguous then, well what's the intent with respect to the B and C elements? [ORS 161.115(1)] says that it's the same as it would be for A."

*Id.* In other words, the purpose of ORS 161.115(1) was specifically to fill in gaps when it was unclear how the legislature wanted a criminal statute to be interpreted. *See also Owen*, 369 Or at 297 (referring to ORS 161.115(1) as a "guiding rule of construction"). It was not meant to supply a new

---

[7] Because this opinion overrules our existing precedents, the panel specifically advised all members of the court of the effect of its decision, but neither the chief judge nor a majority of the regularly elected or appointed judges referred, under ORS 2.570(5), the cause to be considered en banc.

substantive rule of statutory construction that overrides more specific expressions of the legislature's intent for how a given statute was meant to be interpreted.

ORS 161.115(1) is based on MPC § 2.02(4), which provides:

> "When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, *unless a contrary purpose plainly appears*."

(Emphasis added.) By its own terms, MPC § 2.02(4) expressly conditions the operation of its rule on the absence of a contrary expression of legislative intent. Although the same language was not included as part of ORS 161.115(1), it appears to accord with both common sense and how the commission understood that the statute would work. When asked how to define which elements in a statute would be considered "material," various members of the commission expressed their dissatisfaction with the MPC's rigid definition because it did not accurately separate the elements that they believed required a culpable mental state from the ones that they did not. Instead, the commission opted to provide guidance to the courts through the gap-filling general culpability provisions, but ultimately entrust the courts with the responsibility of construing legislative intent.

Further, to exclude legislative intent from the analysis in service of robotically applying the statute's explicit mental state to anything in the statute other than venue, statute of limitations, and the like conflicts with our fundamental charge as a court—to construe statutes to effectuate the intent of the legislature. *See, e.g.*, *Spaght v. State ex rel Dept. of Transportation*, 29 Or App 681, 684-85, 564 P2d 1092 (1977) (observing that "a statute should be construed to carry out the intent of the legislature and to accomplish the purpose for which it was enacted"); ORS 174.020(1)(a) ("In the construction of a statute, a court shall pursue the intention of the legislature if possible."). Ignoring the intent of the legislature that enacted the criminal statute would require us to interpret such statutes in a manner that is

fundamentally different from how we interpret all other statutes, particularly since *Gaines*, which encourages the consideration of relevant legislative history whenever it is helpful to our analysis. 346 Or at 177-78. It would also exclude those statutes from the "core principle" described in *Simonov*, *Haltom*, and *Owen* that the determination of which mental state to apply to which elements is ultimately a matter of the intent of the legislature enacting the criminal statute. It is thus appropriate to examine a statute's text, context, and legislative history when determining whether the legislature intended the statute's explicit mental state to apply to all nonprocedural elements. As always, text is paramount, and when "considering legislative history, we will not lightly disregard our understanding of the statute based on the common and natural meaning of its text and context." *Id*.

We note that our conclusion also comports with another key direction from the legislature about how to construe statutes. Under ORS 174.020(2), "[w]hen a general provision and a particular provision are inconsistent, * * * a particular intent controls a general intent that is inconsistent with the particular intent." *See State v. Ramoz*, 367 Or 670, 690, 438 P3d 615 (2021) ("ORS 174.020(2) provides that, when two provisions are inconsistent, the more specific provision controls." (Internal quotation marks omitted.)). Thus, if a particular statute reflects a specific legislative intent for how it should be construed that is inconsistent with ORS 161.115(1), ORS 174.020 provides that the more specific intent should control our construction of the statute.

Other states which adopted MPC § 2.02(4) likewise prioritize the legislature's intent regarding the specific crime at issue over the general interpretive guideline. For example, despite, like Oregon, having implemented the MPC's directive to apply a stated mental state to each material element of the crime, the New Jersey Appellate Division determined that the legislature did not intend for the culpable mental state apply to the fact that a firearm was a "community gun" as defined by the statute describing the offense, based on the legislative history and the fact that the legislature did not include a mental state in that part of the

statute. *State v. Scott*, 429 NJ Super 1, 8, 55 A3d 728, 732-33 (2012). The court used the same methodology to reach the opposite conclusion with regard to the crime of criminal restraint, holding that the culpable mental state applied to all three elements of restraining, unlawfulness, and exposing the victim to a risk of serious bodily injury, based on the text and legislative history of the offense. *State v. Worthy*, 329 NJ Super 109, 114-16, 746 A2d 1063, 1066-67 (2000).

The Vermont Supreme Court likewise concluded that, to be convicted of enabling the consumption of alcohol by a minor, the person must not only knowingly enable, but also know that the person being enabled is a minor. *State v. Richland*, 200 Vt 401, 413, 132 A3d 702, 710 (2015). The court acknowledged that "the presumption that *mens rea* attaches to all elements of a statute may be rebutted by a showing of *clear legislative intent* to the contrary," but found no such indication in either the text or legislative history of the statute. *Id.* at 409 (emphasis in original). As discussed above, even though those states adopted the MPC's language including "unless a contrary purpose plainly appears," the legislative history of ORS 161.115 indicates that the legislature did not intend to grant courts less flexibility than the MPC—to the contrary, the legislature sought greater flexibility in interpreting which elements necessarily require a culpable mental state.

The text, context, and legislative history of ORS 161.115(1), as well as the court's application of that provision in *Owen*, demonstrate that we cannot ignore the intent of the legislature enacting the criminal statute. Indeed, the only point of agreement in the body of conflicting case law is the critical importance of legislative intent to the analysis. *See, e.g.*, *Simonov*, 358 Or at 546 ("The determination whether a particular element of an offense within the Criminal Code requires a culpable mental state and, if so, what mental state is required, ultimately is a matter of legislative intent."); *Andrews*, 174 Or App at 365 ("[W]e emphasize that legislative intent must be the touchstone of analysis under ORS 161.095 to ORS 161.115."); *accord Owen,* 369 Or at 320 ("[T]he definition of second-degree assault suggests that applying the guideline in ORS 161.115(1) *** would be incorrect: It would require the knowing culpable mental

state to apply to a result element, which normally takes an intentional, reckless, or criminal negligence mental state under the definitions of the mental states in ORS 161.085.").

In sum, the analysis of determining which mental state attaches to an element of a crime proceeds as follows for statutes within the Criminal Code.[8] For statutes that contain an explicit mental state, that mental state applies to each nonprocedural element of the crime unless the text, context, and legislative history indicate that the legislature intended otherwise. ORS 161.115(1). For statutes that do not contain an explicit mental state, the court must determine the type of element at issue to associate a mental state under the general culpability provisions, unless the legislature enacting the criminal statute intended otherwise. ORS 161.115(2).

E.   *Construction of Mental State in ORS 162.315*

Having determined that legislative intent, including consideration of legislative history, of the statute defining the offense plays a role in analyzing whether a mental state attaches to an element of a crime even when that statute provides an explicit mental state, we must evaluate the resisting arrest statute to determine whether the legislature meant to require proof that defendant intended to create a substantial risk of physical injury to a person. For the reasons explained below, we conclude that the trial court did not err in refusing to give defendant's proposed instruction because, while ORS 162.315 does require that a mental state attach to the element of creating a substantial risk of injury, that mental state is not intentionally.

Again, ORS 162.315(1) provides, "[a] person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest." The statute defines "resists" as:

> "the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical

---

[8] The same analysis applies to statutes that fall outside the Criminal Code that do not reflect a legislative intent to dispense with a culpable mental state under ORS 161.105(1).

injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer."

ORS 162.315(2)(c). We have previously observed that this definition contains both a means and an end: "The means includes the use of violence, physical force, or any other means. The end is a substantial risk of physical injury to any person." *State v. Remsh*, 221 Or App 471, 477, 190 P3d 476 (2008). The question is whether the legislature intended to apply the mental state of intentionally to both components of the definition. ORS 161.115(1) instructs us to apply the mental state of intentionally to both the means and the end, so we turn to evidence of legislative intent to confirm or rebut the conclusion under the default rule analysis. *See Haltom*, 366 Or at 802-03 (reviewing evidence of legislative intent "to confirm or rebut any tentative conclusion reached under the default rule analysis" for purposes of ORS 161.115(2)).

The statutory text provides little guidance to suggest how the mental state in the phrase "intentionally resists a person" was meant to be interpreted in relation to the means and the end components of the definition of "resists." We have previously described similarly worded statutes as ambiguous because, "[a]s a matter of grammar[,] *** it is not at all clear how far down the sentence the [culpability term] is intended to travel." *See Schodrow*, 187 Or App at 230 (explaining that the language of a statute prohibiting "knowingly *** [c]arr[ying] any firearm concealed upon the person" was ambiguous about whether the knowledge requirement applies to the fact that the item is a firearm).

Instead, the legislative history of ORS 162.315, which we set out in detail in *Olive*, provides more clarity on how the legislature understood the statute when it was enacted. The first preliminary draft of ORS 162.315 provided that "[a] person commits the crime of resisting arrest if *** [b]y using or threatening to use violence, physical force or any other means creating a substantial risk of physical injury to any person he intentionally prevents or attempts to prevent a person he knows to be a peace officer from making

an arrest." *Olive*, 259 Or App at 110. The phrase "creating a substantial risk of physical injury" precedes the use of the word "intentionally." Grammatically, had the legislature intended to require proof of intent to create a substantial risk of physical injury, it would have made little sense to place that intent element after the requirement that defendant create a substantial risk of physical injury. Doing so would have required the reader to apply the intent element in reverse, back through the statute, in defiance of the common conventions of reading. The placement of the mental state in the preliminary draft is consistent with the crux of the crime—not to create a risk of injury, but to prevent a person from making an arrest.

Although the legislature later amended the statute to its current form, research counsel for the Criminal Law Revision Commission explained that the goal of the amendment was only to improve clarity by making the structure of ORS 162.315 consistent with other sections of the proposed code. *Id.* The substance was intended to "remain[] the same as in the original." *Id.* (internal quotation marks omitted). The only other alteration to ORS 162.315 before its enactment was changing the phrase "from making an arrest" to "in making an arrest" to keep the provision grammatically correct. *Id.* at 111.

The commentary reinforces our conclusion that the legislature meant for "intentionally" to apply to the person's conduct, not to the result of that conduct. That commentary provides:

> "Two culpability elements are found in subsection (1): The actor's conduct must be intentional, and must be accompanied by knowledge that the person resisted is a peace officer. Subsection (2) defines 'resists' in terms of physical force or violence. Resistance is prohibited if it 'creates a substantial risk of physical injury to *any person*,' i.e., the actor, the peace officer or other persons in the immediate area."

Commentary § 206 at 204 (emphasis in original). The commentary purports to describe the requisite mental states for the crime of resisting arrest, explaining the elements that the person must act intentionally and create a substantial risk of physical injury as distinct from one another. Thus,

the legislative history indicates that the legislature did not mean for "intentionally" to apply to "creating a substantial risk of physical injury."[9]

In sum, although the element of creating a substantial risk of injury is a "material element that necessarily requires a mental state," evidence of legislative intent affirmatively rebuts the presumption that "intentionally" should be that mental state. Because defendant's requested jury instruction was an incorrect statement of the law the trial court did not err in denying it.

## IV.   CONCLUSION

In sum, we conclude that all elements other than venue, statute of limitations, and the like, "necessarily require[] a culpable mental state" under ORS 161.095(2), regardless of whether the statute provides an explicit mental state. We further conclude that the presumption that a statute's explicit mental state applies to each material element may be rebutted if an analysis of the statute's text, context, and legislative history indicates that was not the intent of the legislature. Thus, because the legislative history of ORS 162.315 contains clear indication that the legislature did not mean to require proof that the defendant specifically intended to create a substantial risk of physical injury to commit the crime of resisting arrest, ORS 161.115(1) does not operate to apply the statute's intent requirement to that particular element. The trial court did not err in refusing to give defendant's proposed jury instruction.

Affirmed.

---

[9] We note that ORS 162.315 applies to "the use *or threatened use* of violence, physical force or any other means that creates a substantial risk of physical injury to any person," which could implicate the free speech protections provided by Article I, section 8, of the Oregon Constitution. (Emphasis added.) We have found nothing in the legislative history of the statute to indicate that the legislature intended the mental state to attach to the "creates a substantial risk of physical injury" element to avoid a constitutional problem under Article I, section 8. Given the text of the statute, the types of threats covered by the statute are likely cabined by imposing an objective standard for whether the intentional threat "creates a substantial risk of physical injury to any person." *See State v. Rangel*, 328 Or 294, 305, 977 P2d 379 (1999) (explaining that a statute criminalizing the making of a threat can satisfy Article I, section 8, without requiring proof of a specific intent to carry out a threat or any present ability to do so, as long as the elements of the statute serve the same purpose of limiting its reach to those threats that are genuine and express an intention that they will be carried out).